**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.:** _____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY, and GEICO CASUALTY CO.,

Plaintiffs,

**Jury Trial Demand**

-v-

MILLENIUM MEDICAL GROUP, CORP., DAMARYS
SUAREZ a/k/a DAMARYS QUIRIELLO, MICHEL
BORMEY GARCIA, M.D., SPINE & SPORT REHAB, INC.,
GIOVANNI RODRIGUEZ, ROY CHRISTY MUSOFF, M.D.,
VIDA MEDICAL REHAB CORP., PEDRO HERRERA
VILLAFRANCA, L.M.T., NESTOR FERNANDEZ, M.D.,
ACE MEDICAL & REHAB CENTER INC., YANIRMA
TOLEDO, LENSKY J. HERNANDEZ SANTIAGO, L.M.T.,
and NORINE DEL CARMEN ROSADO, M.D.,

Defendants.
_____/

## COMPLAINT

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "Plaintiffs"), as and for

their Complaint against Defendants Millenium Medical Group, Corp. ("Millenium Medical"),[1]

Damarys Suarez a/k/a Damarys Quiriello ("Suarez"), Michel Bormey Garcia, M.D. ("Garcia"),

Spine & Sport Rehab, Inc. ("Spine & Sport"), Giovanni Rodriguez ("Rodriguez"), Roy Christy

Musoff, M.D. ("Musoff"), Vida Medical Rehab Corp. ("Vida Medical"), Pedro Herrera

---

[1] According to the Florida Department of State Division of Corporations database, Millenium Medical spells its name as "Millenium" instead of "Millennium" in all of its Florida corporate filings.

Villafranca, L.M.T. ("Villafranca"), Nestor Fernandez, M.D. ("Fernandez"), Ace Medical & Rehab Center Inc. ("Ace Medical"), Yanirma Toledo ("Toledo"), Lensky J. Hernandez Santiago, L.M.T. ("Santiago"), and Norine Del Carmen Rosado, M.D. ("Rosado")(collectively, the "Defendants"), hereby allege as follows:

1.    This action seeks to recover more than $1,345,000.00 that the respective Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Spine & Sport, Millenium Medical, Vida Medical, and Ace Medical (collectively, the "Clinic Defendants") relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services and goods, including putative initial examinations, follow-up examinations, physical therapy, chiropractic, percutaneous electrical nerve stimulation ("PENS") treatments, and related services (collectively, the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims who were eligible for coverage under GEICO PIP insurance policies ("Insureds").

2.    Additionally, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending fraudulent and unlawful PIP claims that the respective Defendants submitted through the Clinic Defendants, because of the fraudulent and unlawful activities described herein.

3.    As set forth herein, the Defendants were never entitled to receive payment on the PIP insurance claims that they submitted to GEICO, because:

   (i)    at all relevant times, the Defendants operated in violation of Florida law, including: (a) the licensing and operating requirements set forth in Florida's Health Care Clinic Act, Fla. Stat. §§ 400.990 et seq. (the "Clinic Act"); (b) Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"); and (c) Florida's Physical Therapy Practice Act, Fla. Stat. §§ 486.011-486.172 (the "Physical Therapy Act"), thereby rendering

2

the Defendants ineligible to collect PIP insurance benefits in the first instance, and rendering the Defendants' PIP insurance charges noncompensable and unenforceable;

(ii)     the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services;

(iii)    in many cases, the Fraudulent Services were never legitimately provided in the first instance;

(iv)    the Defendants' billing for the Fraudulent Services misrepresented and exaggerated the nature, extent, and results of the Fraudulent Services, in order to fraudulently and unlawfully inflate the charges submitted to GEICO;

(v)     the Defendants unlawfully billed GEICO for "physical therapy" services that were provided by massage therapists and unlicensed/unsupervised individuals; and

(vi)    the Defendants' billing for the Fraudulent Services misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and the billing was submitted in violation of the requirements set forth in Florida's Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

4.      As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO and other insurers through the Clinic Defendants.

5.      Each charge submitted by the Defendants through the Clinic Defendants since at least 2019 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" - "4" set forth large and representative examples of the fraudulent and unlawful claims that have been identified to-date that the Defendants submitted to GEICO by mail through the respective Clinic Defendants.

6.      The Defendants' interrelated fraudulent and unlawful schemes began no later than 2019 and have continued uninterrupted since that time. As a result of the Defendants' schemes,

3

GEICO has incurred damages of more than $1,345,000.00.

## PARTIES

### I.     Plaintiffs

7.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO" or "Plaintiffs") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and issue automobile insurance policies in Florida.

### II.    Defendants

8.      Upon information and belief based on publicly-available information, Defendant Rosado resides in and is a citizen of California, but previously resided in and was a citizen of Florida. Rosado was licensed to practice medicine in Florida on or about February 12, 2014. Rosado falsely purported to serve as medical director at: (i) Spine & Sport between December 2020 and February 2024; (ii) Millenium Medical between December 2023 and 2025; (iii) Vida Medical between March 2022 and 2025; and (iv) Ace Medical between 2019 and 2025, and used Spine & Sport, Millenium Medical, Vida Medical, and Ace Medical as vehicles to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

9.      Defendant Spine & Sport is a Florida corporation with its principal place of business in West Palm Beach, Florida, and was owned and controlled by Rodriguez. Spine & Sport was incorporated in Florida on or about May 27, 2020. As set forth herein, Rodriguez, Rosado, and Musoff used Spine & Sport as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

10.     Defendant Rodriguez resides in and is a citizen of Florida. Rodriguez is not licensed to practice any health care profession in Florida. Rodriguez owned and controlled Spine & Sport,

and used Spine & Sport as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

11.     Defendant Musoff resides in and is a citizen of Florida. Musoff was licensed to practice medicine in Florida on or about June 7, 1991. Musoff falsely purported to serve as medical director at Spine & Sport between February 2024 and the present, and used Spine & Sport as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

12.     Defendant Millenium Medical is a Florida corporation with its principal place of business in Miami, Florida, and was owned and controlled by Suarez. Millenium Medical was incorporated in Florida on or about August 24, 2017. As set forth herein, Suarez, Garcia, and Rosado used Millenium Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

13.     Defendant Suarez resides in and is a citizen of Florida. Suarez was licensed as a certified nursing assistant in Florida on or about December 6, 2024. Suarez owned and controlled Millenium Medical, and used Millenium Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

14.     Defendant Garcia resides in and is a citizen of Florida. Garcia was licensed to practice medicine in Florida on or about July 31, 2019. Garcia falsely purported to perform or directly supervise many of the Fraudulent Services at Millenium Medical, falsely purported to serve as medical director at Millenium Medical between March 2020 and December 2023, and used Millenium Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

15.     Defendant Vida Medical is a Florida corporation with its principal place of business

5

in Hialeah, Florida, and was owned and controlled by Villafranca. Vida Medical was incorporated in Florida on or about January 8, 2019. As set forth herein, Villafranca, Fernandez, and Rosado used Vida Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

16.     Defendant Villafranca resides in and is a citizen of Florida. Villafranca was licensed as a massage therapist in Florida on or about March 29, 2017. Villafranca owned and controlled Vida Medical, and used Vida Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

17.     Defendant Fernandez resides in and is a citizen of Florida. Fernandez was licensed to practice medicine in Florida on or about April 24, 1989. Fernandez falsely purported to perform or directly supervise many of the Fraudulent Services at Vida Medical, falsely purported to serve as medical director at Vida Medical between June 2020 and March 2022, and used Vida Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

18.     Defendant Ace Medical is a Florida corporation with its principal place of business in Miami, Florida, and was owned and controlled by Toledo and Santiago. Ace Medical was incorporated in Florida on or about September 8, 2006. As set forth herein, Toledo, Santiago, and Rosado used Ace Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

19.     Defendant Toledo resides in and is a citizen of Florida. Toledo is not licensed to practice any health care profession in Florida. Toledo owned and controlled Ace Medical, and used Ace Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

20.     Defendant Santiago resides in and is a citizen of Florida. Santiago was licensed as a massage therapist in Florida on or about February 11, 2015. Santiago owned and controlled Ace Medical, and used Ace Medical as a vehicle to submit fraudulent, unlawful, and non-reimbursable PIP billing to GEICO and other insurers.

21.     In September 2024, Toledo, Santiago, and an advanced practice registered nurse named Maylett Leiva Santana ("Santana"), who purported to perform health care services at Ace Medical, were arrested and charged with various insurance-fraud and racketeering-related felonies in connection with a fraudulent PIP billing scheme at Ace Medical involving billing for illusory services. Toledo, Santiago, and Santana ultimately were found guilty on felony conspiracy and fraud charges, were fined, and were sentenced to probation.

**JURISDICTION AND VENUE**

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and the action is between citizens of different states.

23.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations (RICO) Act).

24.     Additionally, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

25.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of the Defendants reside, and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

**ALLEGATIONS**

**I.    Overview of the Pertinent Laws Governing No-Fault Insurance Reimbursement**

26.    Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is set forth in the No-Fault Law, which requires automobile insurers to provide personal injury protection benefits ("PIP Benefits") to insureds.

27.    Under the No-Fault Law, an insured can assign their right to PIP Benefits to health care services providers in exchange for those services. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company using the required claim forms – including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form") – in order to receive payment for medically necessary services.

28.    Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. At the same time, a health care services provider, including a clinic licensed under the Clinic Act, is only eligible to receive PIP Benefits for medically necessary services.

29.    Pursuant to the No-Fault Law, "medically necessary" means:

[A] medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(a)    In accordance with generally accepted standards of medical practice;

(b)    Clinically appropriate in terms of type, frequency, extent, site, and duration; and

(c)    Not primarily for the convenience of the patient, physician, or other health care provider.

30.    In order for a health care service to be eligible for PIP reimbursement, it not only

8

must be medically necessary, but also must be "lawfully" provided.

31.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment."

32.     Thus, health care services providers, including clinics licensed under the Clinic Act, may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

33.     Pursuant to the Clinic Act, and subject to certain limited exceptions that are not applicable in this case, a license issued by the Florida Agency for Health Care Administration (the "AHCA") is required in order to operate a clinic in Florida. The Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

34.     Pursuant to the Clinic Act, health care clinics must – among other things – appoint a licensed physician as medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful," and take immediate corrective action upon discovery of a fraudulent or unlawful charge.

35.     Additionally, a clinic medical director must "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

36.     Further, pursuant to the Clinic Act, a clinic medical director must "[s]erve as the clinic records owner as defined in [Fla. Stat. §] 456.057." Pursuant to Fla. Stat. § 456.057(10), "[a]ll records owners shall develop and implement policies, standards, and procedures to protect

9

the confidentiality and security of the medical record," and all "[e]mployees of records owners shall be trained in these policies, standards, and procedures."

37.     Pursuant to the Clinic Act, no health care clinic in Florida may operate without the day-to-day supervision of a legitimate physician-medical director.

38.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed … but that is not so licensed, or that is otherwise operating in violation of this part … is an unlawful charge" and is ineligible for payment. Moreover, "[a] person who knowingly makes … an unlawful charge commits theft within the meaning of, and [which is] punishable as provided in, [Fla. Stat. §] 812.014."

39.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's licensing, medical director, or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

40.     Under the False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving – or failing to make a good-faith effort to collect – co-payments or deductibles from patients with PIP insurance.

41.     Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

42.     Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics operating pursuant to the Clinic Act, to collect PIP Benefits for massage therapy or for services performed by massage therapists, so long as – among other things – the massage therapy was "provided, supervised, ordered, or prescribed by a licensed physician, chiropractor, or dentist, or was provided in a properly licensed or accredited institutional setting."

43.     However, the No-Fault Law was amended, effective January 1, 2013, to prohibit reimbursement for massage or for services rendered by massage therapists, regardless of any other kinds of health care licenses the massage therapists may have, and regardless of whether the massage therapists work under the supervision of other licensed health care practitioners.

44.     The No-Fault Law was amended to prohibit reimbursement for massage or for services performed by massage therapists in response to widespread PIP fraud involving massage therapists and massage services.

45.     Pursuant to the Physical Therapy Act, massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy.

46.     The Physical Therapy Act also prohibits unlicensed individuals from practicing physical therapy. While the Physical Therapy Act does provide an exception to this rule, which permits a physical therapist to delegate certain patient care activities to an unlicensed assistant, this exception only applies if the unlicensed assistant works under the direct supervision of a physical therapist.

47.     Health care practices operating in Florida may not collect PIP Benefits for: (i) massage; (ii) any services performed by massage therapists; or (iii) physical therapy services that are performed by unlicensed individuals without direct supervision by a licensed physical therapist. Thus, any such charges submitted by a health care provider are unlawful and noncompensable.

48.     Pursuant to the No-Fault Law, insurers such as GEICO are not required to pay PIP Benefits:

(i)     for any service or treatment that is "upcoded", meaning that the service or treatment is billed using a billing code that would result in payment greater in amount than

would be paid by using a billing code that accurately describes the services or treatments performed;

(ii)     to any person who knowingly submits a false or misleading statement relating to the claim or charges; or

(iii)    with respect to a bill or statement that does not substantially meet the billing requirements as set forth in the No-Fault Law.

49.     The No-Fault Law's billing requirements provide – among other things – that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare and Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes that are used to bill for health care services.

50.     In turn, the instructions promulgated by CMS for the completion of HCFA-1500 forms require – among other things – that all HCFA-1500 forms set forth – in Box 31 – the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

51.     To "directly supervise" a service, a supervising health care practitioner "must be present in the office suite and [be] immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician (or other supervising practitioner) must be present in the room when the procedure is performed."

52.     Additionally, pursuant to the No-Fault Law, in order for a health care service to be eligible for PIP reimbursement, the applicable HCFA-1500 claim form must set forth the professional license number of the provider who personally performed or directly supervised the underlying health care service, in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials".

12

53.     Insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual health care practitioners who performed or directly supervised the underlying services.

## II.     The Defendants' Fraudulent and Unlawful Schemes

54.     Since at least 2019 and continuing through the present day, the Defendants conceived and implemented interrelated fraudulent schemes in which they billed GEICO millions of dollars for unlawful, medically unnecessary, illusory, and otherwise non-reimbursable services.

55.     In the claims identified in Exhibits "1" - "4", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as the result of the relatively minor automobile accidents they experienced that would necessitate the treatments that the Defendants purported to provide.

56.     Even so, in the claims identified in Exhibits "1" - "4", the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that the Defendants could submit to insurers – including GEICO – rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to this "treatment".

57.     The Defendants provided their pre-determined and fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" - "4" without regard for the Insureds' individual symptoms or presentation – or, in most cases, the total absence of any significant continuing medical problems arising from any actual automobile accidents.

58.     Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent

13

step, thereby permitting the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

59.    No legitimate physician, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described herein to proceed under their auspices.

60.    The Defendants permitted the fraudulent treatment and billing protocols described herein to proceed under their auspices because: (i) the Clinic Defendants were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight and without medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent and unlawful billing that they submitted through the respective Clinic Defendants to GEICO and other insurers.

**A.    The Unlawful Operation of the Clinic Defendants in Violation of the Clinic Act**

61.    As part of the Defendants' fraudulent and unlawful schemes, the Clinic Defendants operated in violation of the Clinic Act and Florida law.

62.    Because each of the Clinic Defendants operated health care clinics subject to the Clinic Act: (i) Rodriguez could not lawfully operate Spine & Sport; (ii) Suarez could not lawfully operate Millenium Medical; (iii) Villafranca could not lawfully operate Vida Medical; and (iv) Toledo and Santiago could not lawfully operate Ace Medical unless each of the Clinic Defendants employed licensed physicians as their medical directors, who actually performed the required duties of clinic medical directors.

63.    However, if Rodriguez, Suarez, Villafranca, Toledo, and Santiago (collectively, the "Clinic Owners") recruited legitimate physicians to serve as the legitimate medical directors of each of the respective Clinic Defendants, the physicians would actually be obligated to fulfill the statutory requirements applicable to clinic medical directors. By extension, any such legitimate

14

medical directors would impede the Clinic Owners from using the respective Clinic Defendants as vehicles to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other Florida automobile insurers.

64. Accordingly, the Clinic Owners required physicians willing to falsely pose as the "medical director" at each of the respective Clinic Defendants, but who – in actuality – did not fulfill and did not even attempt to fulfill the statutory requirements applicable to clinic medical directors, thereby permitting the Clinic Owners to use the respective Clinic Defendants as vehicles to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other insurers.

65. Therefore:

(i)     Rodriguez retained Rosado and Musoff, both licensed physicians, who – in exchange for compensation – were willing to falsely pose as the legitimate medical directors of Spine & Sport.

(ii)    Suarez retained Garcia and Rosado, both licensed physicians, who – in exchange for compensation – were willing to falsely pose as the legitimate medical directors of Millenium Medical.

(iii)   Villafranca retained Fernandez and Rosado, both licensed physicians, who – in exchange for compensation – were willing to falsely pose as the legitimate medical directors of Vida Medical.

(iv)    Toledo and Santiago retained Rosado, a licensed physician, who – in exchange for compensation – was willing to falsely pose as the legitimate medical director of Ace Medical.

66. In order to circumvent Florida law and induce the AHCA to maintain the licensure of each of the respective Clinic Defendants, the Clinic Owners entered into secret agreements with their respective "medical directors".

67. In exchange for compensation from Rodriguez and Spine & Sport, Rosado and Musoff agreed to falsely represent – to the AHCA; to the insureds who sought treatment at Spine & Sport; and to the insurers, including GEICO, that received PIP claims from Spine & Sport – that

15

they were the true medical directors at Spine & Sport, and that they truly fulfilled the statutory requirements applicable to clinic medical directors.

68. In exchange for compensation from Suarez and Millenium Medical, Garcia and Rosado agreed to falsely represent – to the AHCA; to the insureds who sought treatment at Millenium Medical; and to the insurers, including GEICO, that received PIP claims from Millenium Medical – that they were the true medical directors at Millenium Medical, and that they truly fulfilled the statutory requirements applicable to clinic medical directors.

69. In exchange for compensation from Villafranca and Vida Medical, Fernandez and Rosado agreed to falsely represent – to the AHCA; to the insureds who sought treatment at Vida Medical; and to the insurers, including GEICO, that received PIP claims from Vida Medical – that they were the true medical directors at Vida Medical, and that they truly fulfilled the statutory requirements applicable to clinic medical directors.

70. In exchange for compensation from Toledo, Santiago, and Ace Medical, Rosado agreed to falsely represent – to the AHCA; to the insureds who sought treatment at Ace Medical; and to the insurers, including GEICO, that received PIP claims from Ace Medical – that she was the true medical director at Ace Medical, and that she truly fulfilled the statutory requirements applicable to clinic medical directors.

71. However: (i) Rosado and Musoff never legitimately served as medical directors at Spine & Sport; (ii) Garcia and Rosado never legitimately served as medical directors at Millenium Medical; (iii) Fernandez and Rosado never legitimately served as medical directors at Vida Medical; and (iv) Rosado never legitimately served as medical director at Ace Medical.

72. Instead, from the beginning of each of their associations with the respective Clinic Defendants as the purported "medical directors" of those clinics: (i) Rosado and Musoff ceded true

16

decision-making authority regarding health care services at Spine & Sport – and the resulting billing – to Rodriguez; (ii) Garcia and Rosado ceded true decision-making authority regarding health care services at Millenium Medical – and the resulting billing – to Suarez; (iii) Fernandez and Rosado ceded true decision-making authority regarding health care services at Vida Medical – and the resulting billing – to Villafranca; and (iv) Rosado ceded true decision-making authority regarding health care services at Ace Medical – and the resulting billing – to Toledo and Santiago.

73.     Rosado and Musoff never legitimately served as medical directors at Spine & Sport, inasmuch as they: (i) never conducted systematic reviews of Spine & Sport's billings to ensure that the billings were not fraudulent or unlawful; (ii) never ensured that all treating practitioners at Spine & Sport were properly licensed; and (iii) never even made any attempt to discover the fraudulent and unlawful charges submitted through Spine & Sport – much less take any corrective action – and instead permitted Spine & Sport to operate in the fraudulent and unlawful manner set forth herein.

74.     Garcia and Rosado never legitimately served as medical directors at Millenium Medical, inasmuch as they: (i) never conducted systematic reviews of Millenium Medical's billings to ensure that the billings were not fraudulent or unlawful; (ii) never ensured that all treating practitioners at Millenium Medical were properly licensed; and (iii) never even made any attempt to discover the fraudulent and unlawful charges submitted through Millenium Medical – much less take any corrective action – and instead permitted Millenium Medical to operate in the fraudulent and unlawful manner set forth herein.

75.     Fernandez and Rosado never legitimately served as medical directors at Vida Medical, inasmuch as they: (i) never conducted systematic reviews of Vida Medical's billings to ensure that the billings were not fraudulent or unlawful; (ii) never ensured that all treating

17

practitioners at Vida Medical were properly licensed; and (iii) never even made any attempt to discover the fraudulent and unlawful charges submitted through Vida Medical – much less take any corrective action – and instead permitted Vida Medical to operate in the fraudulent and unlawful manner set forth herein.

76.     Rosado never legitimately served as medical director at Ace Medical, inasmuch as she: (i) never conducted systematic reviews of Ace Medical's billings to ensure that the billings were not fraudulent or unlawful; (ii) never ensured that all treating practitioners at Ace Medical were properly licensed; and (iii) never even made any attempt to discover the fraudulent and unlawful charges submitted through Ace Medical – much less take any corrective action – and instead permitted Ace Medical to operate in the fraudulent and unlawful manner set forth herein.

77.     What is more, though no Florida health care clinic may operate without the day-to-day supervision of a physician-medical director, neither Rosado, Musoff, Garcia, nor Fernandez ever provided legitimate, day-to-day supervision at the respective Clinic Defendants, and – in fact – Rosado, Musoff, Garcia, and Fernandez were only occasionally present at the respective Clinic Defendants.

78.     For example, the AHCA clinic licensing application forms for the Clinic Defendants – which were submitted to the AHCA under the penalties of perjury – indicate that Rosado, Musoff, Garcia, and Fernandez were only present at the respective Clinic Defendants on an occasional basis.

79.     Furthermore, neither Rosado, Musoff, Garcia, nor Fernandez ever: (i) developed and implemented policies, standards, and procedures to protect the confidentiality and security of the medical records at the respective Clinic Defendants; or (ii) trained the employees of the respective Clinic Defendants in any such policies, standards, and procedures, which are among the

required statutory duties of clinic medical directors.

80.      Had Rosado or Musoff legitimately served as Spine & Sport's medical directors, they would have noted, among other things, that Spine & Sport was – as set forth herein – operating in violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law.

81.      In fact, true authority over the provision of health care services at Spine & Sport and the resulting billing submitted through Spine & Sport – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Rodriguez. As a result, neither Rosado nor Musoff legitimately fulfilled their statutory duties as medical directors at Spine & Sport.

82.      Rosado and Musoff unlawfully permitted Rodriguez to dictate the manner in which insureds would be treated at Spine & Sport, and to dictate the manner in which health care services at Spine & Sport would be billed to GEICO and other insurers, because they wanted to continue profiting through Spine & Sport's fraudulent and unlawful billing.

83.      Rodriguez used the façade of Rosado and Musoff's respective "appointments" as the purported "medical directors" at Spine & Sport to do what he was forbidden from doing – namely: (i) operate a health care clinic without a legitimate medical director; (ii) engage in unlicensed medical decision-making with respect to the insureds who sought treatment at Spine & Sport; and (iii) use Spine & Sport as a vehicle to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other insurers.

84.      Had Garcia or Rosado legitimately served as Millenium Medical's medical directors, they would have noted, among other things, that Millenium Medical was – as set forth herein – operating in violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute,

19

the Physical Therapy Act, and the No-Fault Law.

85.     In fact, true authority over the provision of health care services at Millenium Medical and the resulting billing submitted through Millenium Medical – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Suarez. As a result, neither Garcia nor Rosado legitimately fulfilled their statutory duties as medical directors at Millenium Medical.

86.     Garcia and Rosado unlawfully permitted Suarez to dictate the manner in which insureds would be treated at Millenium Medical, and to dictate the manner in which health care services at Millenium Medical would be billed to GEICO and other insurers, because they wanted to continue profiting through Millenium Medical's fraudulent and unlawful billing.

87.     Suarez used the façade of Garcia and Rosado's respective "appointments" as the purported "medical directors" at Millenium Medical to do what he was forbidden from doing – namely: (i) operate a health care clinic without a legitimate medical director; (ii) engage in unlicensed medical decision-making with respect to the insureds who sought treatment at Millenium Medical; and (iii) use Millenium Medical as a vehicle to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other insurers.

88.     Had Fernandez or Rosado legitimately served as Vida Medical's medical directors, they would have noted, among other things, that Vida Medica was – as set forth herein – operating in violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law.

89.     In fact, true authority over the provision of health care services at Vida Medical and the resulting billing submitted through Vida Medical – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Villafranca. As a

20

result, neither Fernandez nor Rosado legitimately fulfilled their statutory duties as medical directors at Vida Medical.

90.     Fernandez and Rosado unlawfully permitted Villafranca to dictate the manner in which insureds would be treated at Vida Medical, and to dictate the manner in which health care services at Vida Medical would be billed to GEICO and other insurers, because they wanted to continue profiting through Vida Medical's fraudulent and unlawful billing.

91.     Villafranca used the façade of Fernandez and Rosado's respective "appointments" as the purported "medical directors" at Vida Medical to do what he was forbidden from doing – namely: (i) operate a health care clinic without a legitimate medical director; (ii) engage in unlicensed medical decision-making with respect to the insureds who sought treatment at Vida Medical; and (iii) use Vida Medical as a vehicle to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other insurers.

92.     Had Rosado legitimately served as Ace Medical's medical director, she would have noted, among other things, that Ace Medical was – as set forth herein – operating in violation of the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law.

93.     In fact, true authority over the provision of health care services at Ace Medical and the resulting billing submitted through Ace Medical – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Toledo and Santiago. As a result, Rosado was not legitimately fulfilling her statutory duties as medical director at Ace Medical.

94.     Rosado unlawfully permitted Toledo and Santiago to dictate the manner in which insureds would be treated at Ace Medical, and to dictate the manner in which health care services

21

at Ace Medical would be billed to GEICO and other insurers, because she wanted to continue profiting through Ace Medical's fraudulent and unlawful billing.

95. Toledo and Santiago used the façade of Rosado's "appointment" as the purported "medical director" at Ace Medical to do what they were forbidden from doing – namely: (i) operate a health care clinic without a legitimate medical director; (ii) engage in unlicensed medical decision-making with respect to the insureds who sought treatment at Ace Medical; and (iii) use Ace Medical as a vehicle to submit large amounts of fraudulent and unlawful PIP billing to GEICO and other insurers.

**B. The Fraudulent and Unlawful Charges for Initial Examinations at Spine & Sport and Ace Medical**

96. As part of their fraudulent treatment and billing protocols, Spine & Sport, Rodriguez, Musoff, Rosado, Ace Medical, Toledo, and Santiago (collectively, the "Examination Defendants") purported to provide many of the Insureds in the claims identified in Exhibits "1" and "4" with an initial examination.

97. As set forth in Exhibit "1", Spine & Sport, Rodriguez, Rosado, and Musoff billed the initial examinations through Spine & Sport under CPT code 99203, typically resulting in a charge of $320.00 for each initial examination they purported to provide.

98. As set forth in Exhibit "4", Ace Medical, Toledo, Santiago, and Rosado billed the initial examinations through Ace Medical under CPT code 99203, typically resulting in a charge of $300.00 for each initial examination they purported to provide.

99. In the claims for initial examinations identified in Exhibits "1" and "4", the charges for initial examinations were fraudulent in that they misrepresented Spine & Sport and Ace Medical's eligibility to collect PIP Benefits in the first instance.

100. In fact, and as set forth herein, Spine & Sport and Ace Medical were never eligible

to collect PIP Benefits, inasmuch as Spine & Sport and Ace Medical operated in violation of Florida law.

101. Moreover, and as set forth herein, the charges for initial examinations identified in Exhibits "1" and "4" were also fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**1.       Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

102. As set forth herein, the No-Fault Law's billing requirements provide that all PIP billing must – among other things – comply with the guidelines promulgated by the AMA in connection with the use of CPT codes.

103. The primary guidelines promulgated by the AMA for the use of CPT codes are contained in the AMA's CPT Assistant.

104. Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial patient examination represents that the insured presented with problems of moderate severity.

105. The CPT Assistant provides various clinical examples of moderate severity presenting problems that would support the use of CPT code 99203 to bill for an initial patient examination:

> (i)      Office visit for initial evaluation of a 48-year-old man with recurrent low back pain radiating to the leg. (General Surgery)
>
> (ii)     Initial office evaluation of a 49-year-old male with nasal obstruction. Detailed exam with topical anesthesia. (Plastic Surgery)
>
> (iii)    Initial office evaluation for diagnosis and management of painless gross hematuria in new patient, without cystoscopy. (Internal Medicine)
>
> (iv)    Initial office visit for evaluation of a 13-year-old female with progressive scoliosis. (Physical Medicine and Rehabilitation)
>
> (v)     Initial office visit with couple for counseling concerning voluntary vasectomy for sterility. Spent 30 minutes discussing procedure, risks and benefits, and answering

23

questions. (Urology)

106.    Accordingly, pursuant to the CPT Assistant, the moderate severity presenting problems that could support the use of CPT code 99203 to bill for an initial patient examination typically are either chronic and relatively serious problems, acute problems requiring immediate invasive treatment, or issues that legitimately require physician counseling.

107.    By contrast, to the extent that the Insureds in the claims identified in Exhibits "1" and "4" had any presenting problems at all as the result of their typically minor automobile accidents, the problems virtually always were minimal severity soft tissue injuries such as sprains and strains.

108.    For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibits "1" and "4" either had no presenting problems at all as the result of their minor automobile accidents, or else had problems of minimal severity, in many of the claims identified in Exhibits "1" and "4", the Insureds did not seek treatment at any hospital as the result of their accidents.

109.    To the limited extent that the Insureds in the claims identified in Exhibits "1" and "4" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and were discharged with nothing more serious than a minor soft tissue injury diagnosis such as a sprain or strain.

110.    Furthermore, in many of the claims identified in Exhibits "1" and "4", the contemporaneous police reports indicate that the Insureds' vehicles were functional following the accidents, and that no one was seriously injured in their accidents, or injured at all.

111.    Even so, in the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants routinely billed for their putative initial examinations using CPT code

99203, and thereby falsely represented that the Insureds presented with problems of moderate severity.

112.    For example:

(i)    On May 7, 2022, an Insured named MH was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to MH's vehicle, and that MH's vehicle was drivable following the accident. The police report further indicated that MH was not injured and that MH did not complain of any pain at the scene. In keeping with the fact that MH was not seriously injured, MH did not visit any hospital emergency room following the accident. To the extent that MH experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of MH at Ace Medical on May 11, 2022, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On July 12, 2022, an Insured named PM was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to PM's vehicle, that there was minor damage to the other vehicle, and that PM's vehicle was drivable following the accident. The police report further indicated that PM was not injured and that PM did not complain of any pain at the scene. In keeping with the fact that PM was not seriously injured, PM did not visit any hospital emergency room following the accident. To the extent that PM experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of PM at Spine & Sport on July 25, 2022, Spine & Sport, Rodriguez, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)    On October 26, 2022, an Insured named NF was involved in an automobile accident. The contemporaneous police report indicated that NF was not injured and that NF did not complain of any pain at the scene. In keeping with the fact that NF was not seriously injured, NF did not visit any hospital emergency room following the accident. To the extent that NF experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of NF at Ace Medical on November 3, 2022, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iv)    On November 4, 2022, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to AC's vehicle, and that AC's vehicle was drivable following the accident.

The police report further indicated that AC was not injured and that AC did not complain of any pain at the scene. In keeping with the fact that AC was not seriously injured, AC did not visit any hospital emergency room following the accident. To the extent that AC experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of AC at Ace Medical on November 16, 2022, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)     On April 10, 2023, an Insured named KJ was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to KJ's vehicle, that there was minor damage to the other vehicle, and that KJ's vehicle was drivable following the accident. The police report further indicated that KJ was not injured and that KJ did not complain of any pain at the scene. In keeping with the fact that KJ was not seriously injured, KJ did not visit any hospital emergency room following the accident. To the extent that KJ experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of KJ at Spine & Sport on April 18, 2023, Spine & Sport, Rodriguez, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vi)    On April 30, 2023, an Insured named JM was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JM's vehicle, that there was minor damage to the other vehicle, and that JM's vehicle was drivable following the accident. The police report further indicated that JM was not injured and that JM did not complain of any pain at the scene. In keeping with the fact that JM was not seriously injured, JM did not visit any hospital emergency room following the accident. To the extent that JM experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of JM at Ace Medical on May 2, 2023, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vii)   On March 3, 2024, an Insured named RB was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to RB's vehicle, and that RB's vehicle was drivable following the accident. The police report further indicated that RB was not injured and that RB did not complain of any pain at the scene. In keeping with the fact that RB was not seriously injured, RB did not visit any hospital emergency room following the accident. To the extent that RB experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of RB at Spine & Sport on March 11, 2024, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely

26

represented that the initial examination involved presenting problems of moderate severity.

(viii)  On May 27, 2024, an Insured named LP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to LP's vehicle, that there was minor damage to the other vehicle, and that LP's vehicle was drivable following the accident. The police report further indicated that LP was not injured and that LP did not complain of any pain at the scene. In keeping with the fact that LP was not seriously injured, LP did not visit any hospital emergency room following the accident. To the extent that LP experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of LP at Ace Medical on June 7, 2024, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ix)  On May 6, 2025, an Insured named JW was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JW's vehicle, that there was minor damage to the other vehicle, and that JW's vehicle was drivable following the accident. The police report further indicated that JW was not injured and that JW did not complain of any pain at the scene. In keeping with the fact that JW was not seriously injured, JW did not visit any hospital emergency room following the accident. To the extent that JW experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of JW at Spine & Sport on May 14, 2025, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(x)  On June 24, 2025, an Insured named JA was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JA's vehicle, that there was minor damage to the other vehicle, and that JA's vehicle was drivable following the accident. The police report further indicated that JA was not injured and that JA did not complain of any pain at the scene. In keeping with the fact that JA was not seriously injured, JA did not visit any hospital emergency room following the accident. To the extent that JA experienced any health problems at all as the result of the accident, they were of minimal severity. Even so, following a purported initial examination of JA at Spine & Sport on July 2, 2025, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

113.  These are only representative examples. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants virtually always falsely represented

27

that the Insureds presented with problems of moderate severity, when, in fact, the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the extent that the Insureds had any presenting problems at all as the result of their minor automobile accidents.

114. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants virtually always falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for their charges for examinations billed under CPT code 99203, because the Examination Defendants were aware that examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity.

115. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants also virtually always falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds, including medically unnecessary follow-up examinations, physical therapy, chiropractic, PENS treatments, and related services.

**2.      Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

116. What is more, in every claim identified in Exhibits "1" and "4" for initial examinations billed under CPT code 99203, the Examination Defendants misrepresented and exaggerated the total amount of time that the examining practitioners spent performing the putative initial examinations.

117. Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial examination represents that the physician or other practitioner who performed the examination spent at least 30 minutes of time performing the examination.

118. When the Examination Defendants billed GEICO for their purported initial

28

examinations using CPT code 99203, they represented that the examining practitioners spent at least 30 minutes of time performing the examinations of the Insureds.

119. In fact, in the claims for initial examinations identified in Exhibits "1" and "4", no examining health care practitioner spent even 15 minutes of time performing the examinations of the Insureds – much less 30 minutes – to the extent that the examinations were actually conducted at all.

120. In keeping with the fact that the initial examinations identified in Exhibits "1" and "4" did not involve more than 15 minutes of time performing the examinations, the examining practitioners used templated forms in purporting to conduct the examinations.

121. All that was required to complete the templated forms was a brief patient interview and a perfunctory physical examination of the Insureds, consisting of a check of some of the Insureds' vital signs and a limited check of the Insureds' systems.

122. These interviews and examinations did not require any examining health care practitioner at Spine & Sport or Ace Medical to spend more than 15 minutes of time performing the putative initial examinations.

123. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants routinely misrepresented the amount of time that was spent in conducting the initial examinations, because lengthier examinations that are billable under CPT code 99203 are reimbursable at higher rates than examinations that take less time to perform.

**3. Misrepresentations Regarding the Extent of the Medical Decision-Making During the Initial Examinations**

124. Pursuant to the CPT Assistant, there are four potential levels of medical decision-making in which a health care practitioner can engage in connection with an initial patient examination – namely: (i) straightforward medical decision-making; (ii) low complexity medical

decision-making; (iii) moderate complexity medical decision-making; and (iv) high complexity medical decision-making.

125. Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or management options to be considered; (ii) the amount and/or complexity of the medical records, diagnostic tests, and other information to be considered; and (iii) the risk of complications, morbidity, and mortality, as well as co-morbidities associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

126. Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or health care practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

127. For an initial patient examination to legitimately entail "low complexity" medical decision-making, the examination typically must, among other things, involve: (i) the review and analysis of some of the patient's medical records or information regarding the patient's history obtained from an independent historian; and (ii) at least some real risk of morbidity associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options for the patient.

128. As set forth above and in Exhibits "1" and "4", the Examination Defendants billed GEICO for virtually all of their putative initial patient examinations using CPT code 99203, and thereby falsely represented that the examining practitioners engaged in genuine low complexity medical decision-making in connection with the initial examinations.

129. In fact, and to the extent that the Insureds in the claims identified in Exhibits "1"

and "4" had any presenting problems at all as the result of their minor automobile accidents, the problems virtually always were minor soft tissue injuries such as sprains and strains.

130. The diagnosis and treatment of these minor soft tissue injuries did not require any legitimate low complexity medical decision-making.

131. First, in the Examination Defendants' claims for initial examinations identified in Exhibits "1" and "4", the initial examinations did not involve the retrieval, review, or analysis of any significant amount of medical records, diagnostic tests, or other information.

132. When the Insureds in the claims identified in Exhibits "1" and "4" presented to the Examination Defendants for "treatment", they did not arrive with any significant medical records.

133. Furthermore, prior to the initial examinations, the Examination Defendants and their associates did not request any significant medical records from any other providers regarding the Insureds, nor did they provide, review, or analyze any complex diagnostic tests or other information in connection with the examinations.

134. Second, in the Examination Defendants' claims for initial examinations identified in Exhibits "1" and "4", there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft tissue complaints, to the extent that the Insureds had any complaints arising from their minor automobile accidents at all.

135. Nor, by extension, was there any risk of significant complications, morbidity, or mortality from the diagnostic procedures or treatment options provided during the initial examinations, to the extent that any such diagnostic procedures or treatment options were provided in the first instance.

136. Rather, to the extent that the initial examinations were conducted in the first instance, the examining practitioners – at the direction of the Examination Defendants – provided

a substantially similar, pre-determined, and false series of soft tissue injury "diagnoses" for each Insured, and prescribed a virtually identical course of medically unnecessary treatment for each Insured.

137.    Specifically, in almost every instance in the claims identified in Exhibits "1" and "4", during the initial examinations, the Insureds did not report any serious continuing medical problems that legitimately could be traced to an underlying automobile accident.

138.    Even so, the examining practitioners – at the direction of the Examination Defendants – prepared initial examination reports in which they provided false, boilerplate sprain/strain and similar soft tissue "diagnoses" to virtually every Insured.

139.    Then, based upon these artificial "diagnoses", the examining practitioners – at the direction of the Examination Defendants – directed the Insureds to undergo a series of medically unnecessary follow-up examinations, physical therapy, chiropractic, and related services.

140.    For example:

(i)    On November 12, 2021, an Insured named BP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to BP's vehicle, that there was minor damage to the other vehicle, and that BP's vehicle was drivable following the accident. The police report further indicated that BP was not injured and that BP did not complain of any pain at the scene. In keeping with the fact that BP was not seriously injured, BP did not visit any hospital emergency room following the accident. To the extent that BP experienced any health problems at all as a result of the accident, they were of minimal severity. On November 17, 2021, BP purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine & Sport, Rodriguez, and Rosado – provided BP with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither BP's presenting problems nor the treatment plan provided to BP by Spine & Sport, Rodriguez, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, BP did not need any significant treatment at all as a result of the accident,

and the treatment plan provided by Spine & Sport, Rodriguez, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to BP. Even so, Spine & Sport, Rodriguez, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(ii)    On February 13, 2022, an Insured named HL was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to HL's vehicle, that there was minor damage to the other vehicle, and that HL's vehicle was drivable following the accident. The police report further indicated that HL was not injured and that HL did not complain of any pain at the scene. In keeping with the fact that HL was not seriously injured, HL did not visit any hospital emergency room following the accident. To the extent that HL experienced any health problems at all as a result of the accident, they were of minimal severity. On February 16, 2022, HL purportedly received an initial examination at Ace Medical. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Ace Medical, Toledo, Santiago, and Rosado – provided HL with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither HL's presenting problems nor the treatment plan provided to HL by Ace Medical, Toledo, Santiago, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, HL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Ace Medical, Toledo, Santiago, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to HL. Even so, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(iii)   On April 27, 2022, an Insured named JN was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to JN's vehicle, that there was minor damage to the other vehicle, and that JN's vehicle was drivable following the accident. The police report further indicated that JN was not injured and that JN did not complain of any pain at the scene. In keeping with the fact that JN was not seriously injured, JN did not visit any hospital emergency room following the accident. To the extent that JN experienced any health problems at all as a result of the accident, they were of minimal severity. On May 4, 2022, JN purportedly received an initial examination at Ace Medical. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the

33

examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Ace Medical, Toledo, Santiago, and Rosado – provided JN with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither JN's presenting problems nor the treatment plan provided to JN by Ace Medical, Toledo, Santiago, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, JN did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Ace Medical, Toledo, Santiago, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to JN. Even so, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(iv) On December 14, 2022, an Insured named GH was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to GH's vehicle, that there was minor damage to the other vehicle, and that GH's vehicle was drivable following the accident. The police report further indicated that GH was not injured and that GH did not complain of any pain at the scene. In keeping with the fact that GH was not seriously injured, GH did not visit any hospital emergency room following the accident. To the extent that GH experienced any health problems at all as a result of the accident, they were of minimal severity. On December 15, 2022, GH purportedly received an initial examination at Ace Medical. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Ace Medical, Toledo, Santiago, and Rosado – provided GH with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither GH's presenting problems nor the treatment plan provided to GH by Ace Medical, Toledo, Santiago, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, GH did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Ace Medical, Toledo, Santiago, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to GH. Even so, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(v) On April 11, 2023, an Insured named LC was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to LC's vehicle, that there was minor damage to the other vehicle, and that LC's vehicle was drivable following the accident. The police report further indicated that LC was not injured and that LC did not complain of any pain at the scene. In keeping with

the fact that LC was not seriously injured, LC did not visit any hospital emergency room following the accident. To the extent that LC experienced any health problems at all as a result of the accident, they were of minimal severity. On April 20, 2023, LC purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine & Sport, Rodriguez, and Rosado – provided LC with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither LC's presenting problems nor the treatment plan provided to LC by Spine & Sport, Rodriguez, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, LC did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Spine & Sport, Rodriguez, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to LC. Even so, Spine & Sport, Rodriguez, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(vi) On April 30, 2023, an Insured named NP was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to NP's vehicle, that there was minor damage to the other vehicle, and that NP's vehicle was drivable following the accident. The police report further indicated that NP was not injured and that NP did not complain of any pain at the scene. In keeping with the fact that NP was not seriously injured, NP did not visit any hospital emergency room following the accident. To the extent that NP experienced any health problems at all as a result of the accident, they were of minimal severity. On May 2, 2023, NP purportedly received an initial examination at Ace Medical. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Ace Medical, Toledo, Santiago, and Rosado – provided NP with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither NP's presenting problems nor the treatment plan provided to NP by Ace Medical, Toledo, Santiago, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, NP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Ace Medical, Toledo, Santiago, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to NP. Even so, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

35

(vii)    On August 6, 2023, an Insured named WR was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to WR's vehicle, that there was minor damage to the other vehicle, and that WR's vehicle was drivable following the accident. The police report further indicated that WR was not injured and that WR did not complain of any pain at the scene. In keeping with the fact that WR was not seriously injured, WR did not visit any hospital emergency room following the accident. To the extent that WR experienced any health problems at all as a result of the accident, they were of minimal severity. On August 10, 2023, WR purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine & Sport, Rodriguez, and Rosado – provided WR with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither WR's presenting problems nor the treatment plan provided to WR by Spine & Sport, Rodriguez, and Rosado presented any risk of significant complications, morbidity, or mortality. On the contrary, WR did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Spine & Sport, Rodriguez, and Rosado consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to WR. Even so, Spine & Sport, Rodriguez, and Rosado billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(viii)    On July 26, 2024, an Insured named TW was involved in an automobile accident. The contemporaneous police report indicated that TW was not injured and that TW did not complain of any pain at the scene. In keeping with the fact that TW was not seriously injured, TW did not visit any hospital emergency room following the accident. To the extent that TW experienced any health problems at all as a result of the accident, they were of minimal severity. On July 31, 2024, TW purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine & Sport, Rodriguez, and Musoff – provided TW with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither TW's presenting problems nor the treatment plan provided to TW by Spine & Sport, Rodriguez, and Musoff presented any risk of significant complications, morbidity, or mortality. On the contrary, TW did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Spine & Sport, Rodriguez, and Musoff consisted of medically unnecessary Fraudulent Services, which did not

pose the least bit of risk to TW. Even so, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(ix)     On February 23, 2025, an Insured named YL was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to YL's vehicle, and that YL's vehicle was drivable following the accident. The police report further indicated that YL was not injured and that YL did not complain of any pain at the scene. In keeping with the fact that YL was not seriously injured, YL did not visit any hospital emergency room following the accident. To the extent that YL experienced any health problems at all as a result of the accident, they were of minimal severity. On March 6, 2025, YL purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine & Sport, Rodriguez, and Musoff – provided YL with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither YL's presenting problems nor the treatment plan provided to YL by Spine & Sport, Rodriguez, and Musoff presented any risk of significant complications, morbidity, or mortality. On the contrary, YL did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Spine & Sport, Rodriguez, and Musoff consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to YL. Even so, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

(x)      On May 29, 2025, an Insured named WM was involved in an automobile accident. The contemporaneous police report indicated that there was minor damage to WM's vehicle, that there was minor damage to the other vehicle, and that WM's vehicle was drivable following the accident. The police report further indicated that WM was not injured and that WM did not complain of any pain at the scene. In keeping with the fact that WM was not seriously injured, WM did not visit any hospital emergency room following the accident. To the extent that WM experienced any health problems at all as a result of the accident, they were of minimal severity. On June 2, 2025, WM purportedly received an initial examination at Spine & Sport. To the extent that the examination was performed in the first instance, the examining practitioner did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, the examining practitioner did not consider any significant number of diagnoses or management options in connection with the examination. Instead, the examining practitioner – at the direction of Spine

37

& Sport, Rodriguez, and Musoff – provided WM with a false list of objectively unverifiable soft tissue injury "diagnoses". Neither WM's presenting problems nor the treatment plan provided to WM by Spine & Sport, Rodriguez, and Musoff presented any risk of significant complications, morbidity, or mortality. On the contrary, WM did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Spine & Sport, Rodriguez, and Musoff consisted of medically unnecessary Fraudulent Services, which did not pose the least bit of risk to WM. Even so, Spine & Sport, Rodriguez, and Musoff billed GEICO for the initial examination under CPT code 99203, and thereby falsely represented that the examination entailed some legitimate, low complexity medical decision-making.

141. These are only representative examples. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants routinely and falsely represented that the examinations involved legitimate low complexity medical decision-making, when, in fact, they did not.

142. Examination Defendants routinely and falsely represented that the putative initial examinations involved legitimate low complexity medical decision-making in order to create a false basis to bill for the initial examinations under CPT code 99203. This is because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations that do not require any complex medical decision-making at all.

143. In this context, Rosado and Musoff, who – at all relevant times – purported to serve as medical directors at Spine & Sport, did not legitimately perform the required duties of a clinic medical director at Spine & Sport.

144. Had Rosado or Musoff legitimately conducted systematic reviews of Spine & Sport's billings, they would have noted – among other things – that Spine & Sport's billings routinely and fraudulently misrepresented the nature, extent, and results of the purported initial examinations at Spine & Sport.

145. In this context, Rosado, who – at all relevant times – purported to serve as medical director at Ace Medical, did not legitimately perform the required duties of a clinic medical

38

director at Ace Medical.

146. Had Rosado legitimately conducted systematic reviews of Ace Medical's billings, she would have noted – among other things – that Ace Medical's billings routinely and fraudulently misrepresented the nature, extent, and results of the purported initial examinations at Ace Medical.

147. In the claims for initial examinations identified in Exhibits "1" and "4", the Examination Defendants routinely and fraudulently misrepresented that the initial examinations were lawfully provided and eligible for PIP reimbursement, when, in fact, the initial examinations were neither lawfully provided nor reimbursable, because:

(i) the putative initial examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii) the charges for the putative initial examinations misrepresented the nature, extent, and results of the examinations; and

(iii) Spine & Sport and Ace Medical were never eligible to collect PIP Benefits in connection with the putative initial examinations in the first instance, inasmuch as Spine & Sport and Ace Medical operated in violation of Florida law.

**C. The Fraudulent and Unlawful Charges for Follow-Up Examinations at Spine & Sport and Ace Medical**

148. In addition to their fraudulent initial examinations, the Examination Defendants also purported to subject many of the Insureds in the claims identified in Exhibits "1" and "4" to one or more fraudulent follow-up examinations during the course of their fraudulent treatment protocols.

149. As set forth in Exhibit "1", Spine & Sport, Rodriguez, Rosado, and Musoff billed the follow-up examinations through Spine & Sport under CPT code 99213, typically resulting in a charge of $156.75 for each follow-up examination they purported to provide.

150.     As set forth in Exhibit "4", Ace Medical, Toledo, Santiago, and Rosado billed the follow-up examinations through Ace Medical under CPT code 99213, typically resulting in a charge of $156.75 for each follow-up examination they purported to provide.

151.     In the claims for follow-up examinations identified in Exhibits "1" and "4", the charges for follow-up examinations were fraudulent in that they misrepresented Spine & Sport and Ace Medical's eligibility to collect PIP Benefits in the first instance.

152.     In fact, and as set forth herein, Spine & Sport and Ace Medical were never eligible to collect PIP Benefits, inasmuch as Spine & Sport and Ace Medical operated in pervasive violation of Florida law.

153.     As set forth below, the charges for the follow-up examinations identified in Exhibits "1" and "4" were also fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

**1.     Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

154.     Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up patient examination typically represents that the insured presented with problems of low to moderate severity.

155.     The CPT Assistant provides various clinical examples of low to moderate severity presenting problems that would support the use of CPT code 99213 to bill for a follow-up patient examination, including:

(i)     Follow-up visit with a 55-year-old male for management of hypertension, mild fatigue, on beta blocker/thiazide regimen. (Family Medicine/Internal Medicine)

(ii)    Follow-up office visit for an established patient with stable cirrhosis of the liver. (Gastroenterology)

(iii)   Outpatient visit with 37-year-old male, established patient, who is 3 years post total colectomy for chronic ulcerative colitis, presents for increase irritation at his stoma.

40

(General Surgery)

(iv)     Routine, follow-up office evaluation at three-month interval for a 77-year-old female with nodular small cleaved-cell lymphoma. (Hematology/Oncology)

(v)      Follow-up visit for a 70-year-old diabetic hypertensive patient with recent change in insulin requirement. (Internal Medicine/Nephrology)

(vi)     Quarterly follow-up visit for a 45-year-old male, with stable chronic asthma, on steroid and bronchodilator therapy. (Pulmonary Medicine)

(vii)    Office visit with 80-year-old female established patient, for follow-up osteoporosis, status-post compression fractures. (Rheumatology)

156.    Accordingly, pursuant to the CPT Assistant, the low to moderate severity presenting problems that could support the use of CPT code 99213 to bill for a follow-up patient examination typically are problems that pose some ongoing, real threat to the patient's health.

157.    By contrast, to the extent that the Insureds in the claims identified in Exhibits "1" and "4" suffered any injuries at all as the result of their minor accidents, the injuries were minor soft tissue injuries – such as sprains and strains – which were not severe at all.

158.    Ordinary soft tissue injuries such as sprains and strains virtually always resolve after a short course of conservative treatment such as rest, ice, compression, and/or elevation – or no treatment at all.

159.    By the time the Insureds in the claims identified in Exhibits "1" and "4" presented at Spine & Sport and Ace Medical for the putative follow-up examinations, the Insureds either did not have any genuine presenting problems at all as the result of their typically minor automobile accidents, or their problems were minimal.

160.    Even so, in the claims for follow-up examinations identified in Exhibits "1" and "4", the Examination Defendants routinely billed GEICO for their putative follow-up examinations under CPT code 99213, and thereby falsely represented that the Insureds continued

41

to suffer from presenting problems of low to moderate severity at the time of the purported follow-up examinations.

161.   For example:

(i)   On May 29, 2019, an Insured named YV was involved in an automobile accident. The contemporaneous police report indicated that YV was not injured and that YV did not complain of any pain at the scene. In keeping with the fact that YV was not seriously injured, YV did not visit any hospital emergency room following the accident. To the extent that YV experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of YV at Ace Medical on June 17, 2019 and July 11, 2019, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(ii)   On November 4, 2019, an Insured named LM was involved in an automobile accident. The contemporaneous police report indicated that LM was not injured and that LM did not complain of any pain at the scene. In keeping with the fact that LM was not seriously injured, LM did not visit any hospital emergency room following the accident. To the extent that LM experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of LM at Ace Medical on December 11, 2019 and January 3, 2020, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(iii)   On January 18, 2020, an Insured named JS was involved in an automobile accident. The contemporaneous police report indicated that JS was not injured and that JS did not complain of any pain at the scene. In keeping with the fact that JS was not seriously injured, JS did not visit any hospital emergency room following the accident. To the extent that JS experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of JS at Ace Medical on February 7, 2020 and February 26, 2020, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(iv)   On February 22, 2021, an Insured named RC was involved in an automobile accident. The contemporaneous police report indicated that RC was not injured and that RC did not complain of any pain at the scene. In keeping with the fact that RC

42

was not seriously injured, RC did not visit any hospital emergency room following the accident. To the extent that RC experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of RC at Ace Medical on March 10, 2021 and March 31, 2021, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(v)     On October 12, 2021, an Insured named JM was involved in an automobile accident. The contemporaneous police report indicated that JM was not injured and that JM did not complain of any pain at the scene. In keeping with the fact that JM was not seriously injured, JM did not visit any hospital emergency room following the accident. To the extent that JM experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of JM at Spine & Sport on January 27, 2022 and March 17, 2022, Spine & Sport, Rodriguez, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(vi)    On December 5, 2021, an Insured named JC was involved in an automobile accident. The contemporaneous police report indicated that JC was not injured and that JC did not complain of any pain at the scene. In keeping with the fact that JC was not seriously injured, JC did not visit any hospital emergency room following the accident. To the extent that JC experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of JC at Ace Medical on December 22, 2021 and January 7, 2022, Ace Medical, Toledo, Santiago, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(vii)   On March 22, 2022, an Insured named AV was involved in an automobile accident. The contemporaneous police report indicated that AV was not injured and that AV did not complain of any pain at the scene. In keeping with the fact that AV was not seriously injured, AV did not visit any hospital emergency room following the accident. To the extent that AV experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following three purported follow-up examinations of AV at Spine & Sport on April 13, 2022, April 29, 2022, and May 19, 2022, Spine & Sport, Rodriguez, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

43

(viii)   On December 5, 2023, an Insured named DS was involved in an automobile accident. The contemporaneous police report indicated that DS was not injured and that DS did not complain of any pain at the scene. In keeping with the fact that DS was not seriously injured, DS did not visit any hospital emergency room following the accident. To the extent that DS experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following three purported follow-up examinations of DS at Spine & Sport on January 11, 2024, February 8, 2024, and February 26, 2024, Spine & Sport, Rodriguez, and Rosado billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(ix)   On February 2, 2024, an Insured named SS was involved in an automobile accident. The contemporaneous police report indicated that SS was not injured and that SS did not complain of any pain at the scene. In keeping with the fact that SS was not seriously injured, SS did not visit any hospital emergency room following the accident. To the extent that SS experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of SS at Spine & Sport on March 12, 2024 and April 18, 2024, Spine & Sport, Rodriguez, and Musoff billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

(x)   On April 24, 2025, an Insured named CC was involved in an automobile accident. The contemporaneous police report indicated that CC was not injured and that CC did not complain of any pain at the scene. In keeping with the fact that CC was not seriously injured, CC did not visit any hospital emergency room following the accident. To the extent that CC experienced any health problems at all as a result of the accident, they were of minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following two purported follow-up examinations of CC at Spine & Sport on May 19, 2025 and July 2, 2025, Spine & Sport, Rodriguez, and Musoff billed GEICO for the follow-up examinations under CPT code 99213, and thereby falsely represented that the follow-up examinations involved presenting problems of low to moderate severity.

162.   These are only representative examples. In the claims for follow-up examinations identified in Exhibits "1" and "4", the Examination Defendants routinely and falsely represented that the Insureds presented with problems of low to moderate severity, when, in fact, the Insureds either did not have any genuine presenting problems at all as the result of their typically minor automobile accidents at the time of the follow-up examinations, or else their presenting problems

were minimal.

163. In the claims for follow-up examinations identified in Exhibits "1" and "4", the Examination Defendants virtually always falsely represented that the Insureds presented with problems of low to moderate severity in order to: (i) create a false basis for their charges for the examinations billed under CPT code 99213, because examinations billable under CPT code 99213 are reimbursable at higher rates than examinations involving problems of minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**2. Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations**

164. What is more, in the claims for follow-up examinations identified in Exhibits "1" and "4", no examining health care practitioner associated with the Examination Defendants ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

165. Rather, following the purported follow-up examinations at the Examination Defendants' offices, the examining practitioners – at the direction of the Examination Defendants – simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and (ii) either: (a) referred the Insureds for even more medically unnecessary Fraudulent Services, despite the fact that the Insureds purportedly had already received extensive physical therapy and other Fraudulent Services that supposedly had not been successful in resolving their purported pain symptoms; or (b) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

166. The putative "follow-up examinations" that the Examination Defendants purported to provide the Insureds in the claims identified in Exhibits "1" and "4" were, therefore, medically

45

useless, and played no legitimate role in the treatment or care of the Insureds. This is because the putative "results" of the examinations were prearranged to comport with the medically unnecessary treatment plans that were pre-determined for each Insured from the moment that they presented at Spine & Sport and Ace Medical's offices.

167. In the claims for follow-up examinations identified in Exhibits "1" and "4", the Examination Defendants routinely and falsely misrepresented that the follow-up examinations were lawfully provided and eligible for PIP reimbursement, when, in fact, the follow-up examinations were neither lawfully provided nor reimbursable, because:

(i) the putative follow-up examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii) the charges for the putative follow-up examinations misrepresented the nature, extent, and results of the examinations; and

(iii) Spine & Sport and Ace Medical were never eligible to collect PIP Benefits in connection with the putative follow-up examinations in the first instance, inasmuch as Spine & Sport and Ace Medical operated in violation of Florida law.

**D. The Defendants' Fraudulent and Unlawful Charges for "Physical Therapy" Services**

168. As part of their fraudulent and unlawful billing schemes, the Defendants virtually always purported to subject the Insureds in the claims identified in Exhibits "1" - "4" to months of medically unnecessary "physical therapy" treatments, which the Defendants then fraudulently and unlawfully billed to GEICO.

169. As set forth in Exhibit "1", Spine & Sport, Rodriguez, Rosado, and Musoff billed the "physical therapy" services through Spine & Sport to GEICO under:

(i) CPT code 97010, for purported hot/cold pack treatment, typically resulting in a charge of $15.00 for each modality they purported to provide.

(ii) CPT code 97012, for purported mechanical traction, typically resulting in a charge

of $50.00 for each modality they purported to provide.

(iii) CPT code 97014, for purported electrical stimulation, typically resulting in a charge of $45.00 for each modality they purported to provide.

(iv) CPT code 97032, for purported attended electrical stimulation with constant attendance, typically resulting in a charge of $47.00 for each modality they purported to provide.

(v) CPT code 97035, for purported ultrasound treatment, typically resulting in a charge of $42.00 for each modality they purported to provide.

(vi) CPT code 97039, for purported unspecified physical therapy treatments, typically resulting in a charge of $29.75 for each modality they purported to provide.

(vii) CPT code 97110, for purported therapeutic exercises, typically resulting in a charge of $65.00 for each modality they purported to provide.

(viii) CPT code 97112, for purported therapeutic neuromuscular reeducation, typically resulting in a charge of $75.00 for each modality they purported to provide.

(ix) CPT code 97140, for purported manual therapy, typically resulting in a charge of $65.00 for each modality they purported to provide.

(x) CPT code 97530, for purported therapeutic activities, typically resulting in a charge of $72.55 for each modality they purported to provide.

(xi) CPT code 97535, for purported self-care/home management training, typically resulting in a charge of $74.30 for each modality they purported to provide.

(xii) Healthcare Common Procedure Coding System ("HCPCS") code G0283, for purported electrical stimulation, typically resulting in a charge of $25.70 for each modality they purported to provide.

(xiii) HCPCS code S8948, for purported "low-level laser" treatment, typically resulting in a charge of $69.30 for each modality they purported to provide.

170. As set forth in Exhibit "2", Millenium Medical, Suarez, Garcia, and Rosado billed the "physical therapy" services through Millenium Medical to GEICO under:

(i) CPT code 97010, for purported hot/cold pack treatment, typically resulting in a charge of $12.00 for each modality they purported to provide.

(ii) CPT code 97012, for purported mechanical traction, typically resulting in a charge of $35.00 for each modality they purported to provide.

(iii)  CPT code 97014, for purported electrical stimulation, typically resulting in a charge of $35.00 for each modality they purported to provide.

(iv)  CPT code 97018, for purported paraffin bath treatment, typically resulting in a charge of $25.00 for each modality they purported to provide.

(v)  CPT code 97026, for purported infrared light therapy, typically resulting in a charge of $45.00 for each modality they purported to provide.

(vi)  CPT code 97034, for purported contrast bath therapy, typically resulting in a charge of $39.00 for each modality they purported to provide.

(vii)  CPT code 97035, for purported ultrasound treatment, typically resulting in a charge of $50.00 for each modality they purported to provide.

(viii)  CPT code 97110, for purported therapeutic exercises, typically resulting in a charge of $70.00 for each modality they purported to provide.

(ix)  CPT code 97112, for purported therapeutic neuromuscular reeducation, typically resulting in a charge of $65.00 for each modality they purported to provide.

(x)  CPT code 97116, for purported therapeutic gait training with stairs, typically resulting in a charge of $65.00 for each modality they purported to provide.

(xi)  CPT code 97139, for purported unspecified physical therapy treatments, typically resulting in a charge of $50.00 for each modality they purported to provide.

(xii)  CPT code 97140, for purported manual therapy, typically resulting in a charge of $65.00 for each modality they purported to provide.

(xiii)  CPT code 97530, for purported therapeutic activities, typically resulting in a charge of $70.00 for each modality they purported to provide.

(xiv)  CPT code 97535, for purported self-care/home management training, typically resulting in a charge of $150.00 for each modality they purported to provide.

(xv)  HCPCS code S8948, for purported "low level laser" treatment, typically resulting in a charge of $140.00 for each modality they purported to provide.

171.  As set forth in Exhibit "3", Vida Medical, Villafranca, Fernandez, and Rosado billed the "physical therapy" services through Vida Medical to GEICO under:

(i)  CPT code 97010, for purported hot/cold pack treatment, typically resulting in a charge of $15.00 for each modality they purported to provide.

48

(ii)     CPT code 97012, for purported mechanical traction, typically resulting in a charge of $35.60 for each modality they purported to provide.

(iii)    CPT code 97032, for purported electrical stimulation, typically resulting in a charge of $40.50 for each modality they purported to provide.

(iv)    CPT code 97035, for purported ultrasound treatment, typically resulting in a charge of $48.00 for each modality they purported to provide.

(v)     CPT code 97110, for purported therapeutic exercises, typically resulting in a charge of $70.00 for each modality they purported to provide.

(vi)    CPT code 97112, for purported therapeutic neuromuscular reeducation, typically resulting in a charge of $75.00 for each modality they purported to provide.

(vii)   CPT code 97140, for purported manual therapy, typically resulting in a charge of $62.20 for each modality they purported to provide.

(viii)  HCPCS code G0283, for purported electrical stimulation, typically resulting in a charge of $31.80 for each modality they purported to provide.

(ix)    HCPCS code S8948, for purported "low level laser" treatment, typically resulting in a charge of $69.30 for each modality they purported to provide.

172.    As set forth in Exhibit "4", Ace Medical, Toledo, Santiago, and Rosado billed the

"physical therapy" services through Ace Medical to GEICO under:

(i)     CPT code 97010, for purported hot/cold pack treatment, typically resulting in a charge of $15.00 for each modality they purported to provide.

(ii)    CPT code 97012, for purported mechanical traction, typically resulting in a charge of $33.75 for each modality they purported to provide.

(iii)   CPT code 97018, for purported paraffin bath treatment, typically resulting in a charge of $47.60 for each modality they purported to provide.

(iv)    CPT code 97026, for purported infrared light therapy, typically resulting in a charge of $13.50 for each modality they purported to provide.

(v)     CPT code 97034, for purported contrast bath therapy, typically resulting in a charge of $38.25 for each modality they purported to provide.

(vi)    CPT code 97035, for purported ultrasound treatment, typically resulting in a charge of $26.50 for each modality they purported to provide.

(vii)   CPT code 97110, for purported therapeutic exercises, typically resulting in a charge of $68.40 for each modality they purported to provide.

(viii)  CPT code 97112, for purported therapeutic neuromuscular reeducation, typically resulting in a charge of $71.50 for each modality they purported to provide.

(ix)    CPT code 97140, for purported manual therapy, typically resulting in a charge of $62.20 for each modality they purported to provide.

(x)     CPT code 97530, for purported therapeutic activities, typically resulting in a charge of $72.55 for each modality they purported to provide.

(xi)    CPT code 97535, for purported self-care/home management training, typically resulting in a charge of $74.30 for each modality they purported to provide.

(xii)   HCPCS code G0283, for purported electrical stimulation, typically resulting in a charge of $25.70 for each modality they purported to provide.

(xiii)  HCPCS code S8948, for purported "low level laser" treatment, typically resulting in a charge of $350.00 for each modality they purported to provide.

173.    In the claims identified in Exhibits "1" - "4", the charges for the purported "physical therapy" services were fraudulent and unlawful in that they misrepresented the Defendants' eligibility to collect PIP Benefits in the first instance.

174.    In fact, and as set forth herein, the Defendants were never eligible to collect PIP Benefits, inasmuch as the Clinic Defendants operated in violation of Florida law.

175.    In the claims identified in Exhibits "1" - "4", the charges for the purported "physical therapy" services were also fraudulent, unlawful, and ineligible for PIP reimbursement because the services were performed – to the extent that the services were performed at all – by unlicensed and unsupervised individuals, and by massage therapists, including Villafranca at Vida Medical, Santiago at Ace Medical, Alfredo Romero, L.M.T. ("Romero") at Vida Medical, and Paul M. Aiello, L.M.T. ("Aiello") at Spine & Sport, none of whom was licensed to practice physical therapy.

50

176. Moreover, and in keeping with the fact that the "physical therapy" services in the claims identified in Exhibits "1" - "4" were unlawfully performed by massage therapists and unlicensed/unsupervised individuals, the services were medically unnecessary and were provided, to the extent that the services were provided at all, in a manner that did not comply with legitimate standards of care.

177. In a legitimate clinical setting, each individual patient's physical therapy treatment schedule, and the specific treatment modalities that will be used as part of that treatment, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

178. In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed on an ongoing basis as they receive physical therapy.

179. In keeping with the fact that the "physical therapy" services that were billed to GEICO through the Clinic Defendants were not medically necessary, the Defendants did not tailor the "physical therapy" services that they purported to provide to each Insured's individual circumstances and presentation.

180. There are many individual types of physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

181. However, the Defendants purported to provide substantially similar physical therapy "treatments" to the Insureds in the claims identified in Exhibits "1" - "4" on substantially the same schedule – without regard for the Insureds' individual circumstances.

182. The Defendants were aware of the fact that they could not lawfully recover PIP Benefits for services performed by massage therapists and unlicensed/unsupervised individuals.

183. As a result, and in order to conceal the fact that Villafranca, Santiago, Romero,

Aiello, and other massage therapists and unlicensed/unsupervised individuals performed the purported "physical therapy" services that were unlawfully billed to GEICO through the Clinic Defendants, the Defendants omitted any reference to Villafranca, Santiago, Romero, Aiello, and other massage therapists and unlicensed/unsupervised individuals associated with the Clinic Defendants on the HCFA-1500 forms that they used to bill for the putative "physical therapy" services.

184.    Instead, and in the claims for "physical therapy" services identified in Exhibits "1" - "4", the Defendants routinely and falsely listed various chiropractors, advanced practice registered nurses, and physicians in Box 31 of the HCFA-1500 forms as the supposed providers or direct supervisors of the purported "physical therapy" services.

185.    In the claims for "physical therapy" services identified in Exhibits "1" - "4", the Defendants routinely and falsely misrepresented that the "physical therapy" services were lawfully provided and reimbursable, when, in fact, the "physical therapy" services were neither lawfully provided nor reimbursable, because:

(i)      the purported "physical therapy" services were performed – to the extent that the "physical therapy" services were performed at all – by massage therapists and unlicensed/unsupervised individuals, in contravention of Florida law;

(ii)     the Defendants could not lawfully recover PIP Benefits for the purported "physical therapy" services, because the "physical therapy" services were performed by massage therapists and unlicensed/unsupervised individuals; and

(iii)    the Defendants systematically and fraudulently misrepresented and concealed the identities of the individuals who either personally performed or directly supervised the putative "physical therapy" services.

186.    In this context, Rosado and Musoff – who, at all relevant times, purported to serve as medical directors at Spine & Sport – have not, and could not have, legitimately performed their duties as medical directors at Spine & Sport.

187. Had Rosado or Musoff actually performed their duties as medical directors, they would have noted – among other things – that the "physical therapy" services at Spine & Sport were medically unnecessary, unlawfully provided by massage therapists and/or unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

188. Likewise, Garcia and Rosado – who, at all relevant times, purported to serve as medical directors at Millenium Medical – have not, and could not have, legitimately performed their duties as medical directors at Millenium Medical.

189. Had Garcia or Rosado actually performed their duties as medical directors, they would have noted – among other things – that the "physical therapy" services at Millenium Medical were medically unnecessary, unlawfully provided by massage therapists and/or unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

190. Moreover, Fernandez and Rosado – who, at all relevant times, purported to serve as medical directors at Vida Medical – have not, and could not have, legitimately performed their duties as medical directors at Vida Medical.

191. Had Fernandez or Rosado actually performed their duties as medical directors, they would have noted – among other things – that the "physical therapy" services at Vida Medical were medically unnecessary, unlawfully provided by massage therapists and/or unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

192. In this context, Rosado – who, at all relevant times, purported to serve as medical director at Ace Medical – has not, and could not have, legitimately performed her duties as medical director at Ace Medical.

193. Had Rosado actually performed her duties as medical director, she would have noted – among other things – that the "physical therapy" services at Ace Medical were medically

53

unnecessary, unlawfully provided by massage therapists and/or unlicensed/unsupervised individuals, and unlawfully billed to GEICO.

**E.      The Fraudulent and Unlawful Charges for PENS Treatments at Ace Medical**

194.    Pursuant to the boilerplate diagnoses that they provided to virtually every Insured in the claims identified in Exhibit "4" at the conclusion of their purported examinations, Ace Medical, Toledo, Santiago, and Rosado purported to provide many Insureds with a large number of medically unnecessary PENS treatments.

195.    As set forth in Exhibit "4", Ace Medical, Toledo, Santiago, and Rosado billed the PENS treatments to GEICO under CPT code 64999, typically resulting in a charge of $650.00 for each PENS treatment that they purported to provide.

196.    Like all the other Fraudulent Services that Ace Medical, Toledo, Santiago, and Rosado purported to provide, the charges for the PENS treatments were fraudulent in that they falsely represented that Ace Medical was entitled to receive PIP Benefits in the first instance, when, in fact, Ace Medical was not entitled to receive PIP Benefits because it operated in violation of Florida law.

197.    The charges for the PENS treatments were also fraudulent in that the treatments were medically unnecessary and were provided – to the extent that the treatments were provided at all – pursuant to Ace Medical, Toledo, Santiago, and Rosado's pre-determined fraudulent treatment protocols.

198.    In a legitimate clinical setting, PENS is a procedure that combines the features of electro-acupuncture and transcutaneous nerve stimulation, whereby electrical current is applied through the skin to provide patients with pain control. PENS treatments are administered through fine needle-like electrodes that are placed in close proximity to the patient's painful areas and are

54

then used to stimulate peripheral sensory nerves in the soft tissue.

199.     According to guidelines published by CMS, if pain is effectively controlled through PENS treatments, then implantation of electrodes is warranted.

200.     CMS further instructs that physicians should generally be able to determine whether a patient is likely to derive a significant therapeutic benefit from the continued use of implanted electrodes within a one-month trial period.

201.     Moreover, CMS instructs that a patient can be taught how to utilize implanted electrodes and, once this is accomplished, the patient can use the electrodes safely and effectively without physician supervision. Consequently, it is inappropriate for a patient to visit a physician, physical therapist, or outpatient clinic on a continuing basis for the treatment of pain with PENS treatments.

202.     Even so, Ace Medical, Toledo, Santiago, and Rosado routinely purported to provide large numbers of medically unnecessary PENS treatments to Insureds on an outpatient basis, in order to maximize the amount of fraudulent and unlawful billing that they could submit to GEICO and other insurers.

203.     Moreover, to the extent that Ace Medical, Toledo, Santiago, and Rosado actually provided any electrical stimulation treatments to Insureds in the first instance, the treatments consisted of ordinary electrical stimulation, not legitimate PENS treatments.

204.     Ordinary electrical stimulation treatments are billable at a much lower rate than legitimate PENS treatments.

205.     Ace Medical, Toledo, Santiago, and Rosado deliberately misrepresented the nature of the electrical stimulation treatments they purported to provide and instead billed the treatments as PENS treatments in a calculated attempt to overcharge GEICO for the electrical stimulation

treatments.

**F.     The Defendants' Violations of the False and Fraudulent Insurance Claims Statute**

206.    The Defendants knew that, if they made a legitimate, good-faith effort to collect deductibles from their patients, it would impede their ability to carry out the fraudulent and unlawful scheme described herein. For instance, if the Defendants made legitimate efforts to collect deductibles, Insureds would be less likely to continue presenting to the Clinic Defendants for medically unnecessary treatment.

207.    Accordingly, as part and parcel of their fraudulent and unlawful scheme, the Defendants unlawfully engaged in the general business practice of waiving – or failing to make a good-faith effort to collect – PIP deductibles from their patients, in violation of the False and Fraudulent Insurance Claims Statute.

208.    In keeping with this fact, in virtually all of the thousands of bills (i.e., HCFA-1500 forms) submitted to GEICO through the Clinic Defendants, the Defendants represented that they did not collect any money, whether it be a co-payment or a deductible, from the Insureds.

209.    In the claims identified in Exhibits "1" - "4", the Defendants routinely and falsely represented that the underlying health care services were lawfully provided and reimbursable, when, in fact, the health care services were neither lawfully provided nor reimbursable, because the Defendants operated in violation of the False and Fraudulent Insurance Claims Statute.

**III.    The Fraudulent Claims the Defendants Submitted to GEICO**

210.    To support their fraudulent charges, the Defendants systematically submitted thousands of bills and treatment reports – containing thousands of individual charges – to GEICO through the respective Clinic Defendants, seeking payment for Fraudulent Services that the Defendants were not entitled to receive.

211. The claims that the Defendants submitted to GEICO were false and misleading in the following material respects:

(i) The bills and treatment reports submitted by the Defendants uniformly misrepresented to GEICO that the Defendants were in compliance with Florida law and were, therefore, eligible to collect PIP Benefits in the first instance, when, in fact, the Defendants were not in compliance with Florida law and were not eligible to collect PIP Benefits in the first instance.

(ii) The bills and treatment reports submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided, lawfully billed to GEICO, and eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided, not lawfully billed to GEICO, and not eligible for PIP reimbursement.

(iii) The bills and treatment reports submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services were actually performed. In fact, the Fraudulent Services frequently were not performed at all, and – to the extent that the Fraudulent Services were performed – the Fraudulent Services were not medically necessary and were performed as part of pre-determined fraudulent treatment and billing protocols designed solely to financially enrich the Defendants, and not to benefit the Insureds who supposedly were subjected to the Fraudulent Services.

(iv) The bills and treatment reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level and nature of the Fraudulent Services that purportedly were provided.

## IV. The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

212. The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

213. To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systematically concealed their fraud and have gone to great lengths to accomplish this concealment.

214. For instance, the Defendants knowingly misrepresented and concealed facts in

57

order to prevent GEICO from discovering that the Defendants operated in violation of Florida law and were, therefore, ineligible to collect PIP Benefits in the first instance.

215.    The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary, and frequently, never even performed in the first instance.

216.    The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were oftentimes unlawfully performed by massage therapists and unlicensed/unsupervised individuals, and then unlawfully billed to GEICO.

217.    GEICO is under statutory and contractual duty to promptly and fairly process claims within thirty (30) days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to cause – and did cause – GEICO to rely on them. As a result, GEICO has incurred damages of more than $1,345,000.00.

218.    GEICO did not discover – and could not reasonably have discovered – that its damages were attributable to fraud until shortly before it commenced this action.

**FIRST CAUSE OF ACTION**
**Against Spine & Sport**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

219.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

220.    There is an actual case in controversy between GEICO and Spine & Sport regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Spine & Sport.

221.    Spine & Sport has no right to receive payment for any pending bills submitted to

GEICO because Spine & Sport unlawfully operated in violation of Florida law.

222.     Spine & Sport has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

223.     Spine & Sport has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services.

224.     Spine & Sport has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

225.     Spine & Sport has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided, in order to inflate the charges submitted to GEICO.

226.     Accordingly, GEICO requests that this Court enter a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Spine & Sport has no right to receive payment for any of the pending bills submitted to GEICO.

## SECOND CAUSE OF ACTION
### Against Rodriguez
### (Violation of RICO – 18 U.S.C. § 1962(c))

227.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

228.    Spine & Sport is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

229.    Rodriguez has knowingly conducted and/or participated in, directly or indirectly, the conduct of Spine & Sport's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that Spine & Sport was not eligible to receive, because: (i) Spine & Sport unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

230.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

60

231.     Spine & Sport's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Rodriguez operated Spine & Sport, inasmuch as Spine & Sport was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Spine & Sport to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Spine & Sport continues to attempt collection on the fraudulent billing submitted through Spine & Sport to the present day.

232.     Spine & Sport is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Spine & Sport in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

233.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $550,000.00 pursuant to the fraudulent bills submitted through Spine & Sport.

234.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

**THIRD CAUSE OF ACTION**
**Against Rodriguez, Rosado, and Musoff**
**(Violation of RICO – 18 U.S.C. § 1962(d))**

235.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

236.     Spine & Sport is an ongoing "enterprise", as that term is defined in 18 U.S.C. §

61

1961(4), that engages in activities that affect interstate commerce.

237. Rodriguez, Rosado, and Musoff were employed by, or associated with, the Spine & Sport enterprise.

238. Rodriguez, Rosado, and Musoff have knowingly agreed, combined, and conspired to conduct and/or participate in, directly or indirectly, the conduct of Spine & Sport's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that Spine & Sport was not eligible to receive under the No-Fault Law, because: (i) Spine & Sport unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

239. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

240. Rodriguez, Rosado, and Musoff knew of, agreed to, and acted in furtherance of the

common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

241.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $550,000.00 pursuant to the fraudulent bills submitted through the Spine & Sport enterprise.

242.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

**FOURTH CAUSE OF ACTION**
**Against Spine & Sport, Rodriguez, Rosado, and Musoff**
**(Under Fla. Stat. §§ 501.201 et seq.)**

243.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

244.    Spine & Sport, Rodriguez, Rosado, and Musoff are actively engaged in trade and commerce in the State of Florida.

245.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.23.

246.    Spine & Sport, Rodriguez, Rosado, and Musoff engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

247.    The bills and supporting documents submitted to GEICO by Spine & Sport, Rodriguez, Rosado, and Musoff in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Spine & Sport's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed

in the first instance.

248.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Spine & Sport, Rodriguez, Rosado, and Musoff has been materially injurious to GEICO and its Insureds.

249.    The conduct of Spine & Sport, Rodriguez, Rosado, and Musoff was the actual and proximate cause of the damages sustained by GEICO.

250.    Spine & Sport, Rodriguez, Rosado, and Musoff's unfair and deceptive acts have caused GEICO to sustain damages of at least $550,000.00.

251.    By reason of Spine & Sport, Rodriguez, Rosado, and Musoff's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

### FIFTH CAUSE OF ACTION
**Against Spine & Sport, Rodriguez, Rosado, and Musoff**
**(Common Law Fraud)**

252.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

253.    Spine & Sport, Rodriguez, Rosado, and Musoff intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Spine & Sport for the Fraudulent Services.

254.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Spine & Sport was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and were

eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

255. Spine & Sport, Rodriguez, Rosado, and Musoff made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Spine & Sport that were not reimbursable.

256. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by reason of the above-described conduct, in that it has paid at least $550,000.00 pursuant to the fraudulent bills that were submitted by Spine & Sport, Rodriguez, Rosado, and Musoff through Spine & Sport.

257. Spine & Sport, Rodriguez, Rosado, and Musoff's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

258. Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

## SIXTH CAUSE OF ACTION
### Against Spine & Sport, Rodriguez, Rosado, and Musoff
### (Unjust Enrichment)

259. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

260.   As set forth above, Spine & Sport, Rodriguez, Rosado, and Musoff have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

261.   When GEICO paid the bills and charges submitted by Spine & Sport, Rodriguez, Rosado, and Musoff, it reasonably believed that it was legally obligated to make such payments based on Spine & Sport, Rodriguez, Rosado, and Musoff's improper, unlawful, and unjust acts.

262.   Spine & Sport, Rodriguez, Rosado, and Musoff have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Spine & Sport, Rodriguez, Rosado, and Musoff voluntarily accepted, notwithstanding their improper, unlawful, and unjust billing scheme.

263.   Spine & Sport, Rodriguez, Rosado, and Musoff's retention of GEICO's payments violates fundamental principles of justice, equity, and good conscience.

264.   By reason of the above, Spine & Sport, Rodriguez, Rosado, and Musoff have been unjustly enriched in an amount to be determined at trial, but in no event less than $550,000.00.

**SEVENTH CAUSE OF ACTION**
**Against Millenium Medical**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

265.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

266.   There is an actual case in controversy between GEICO and Millenium Medical regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Millenium Medical.

267.   Millenium Medical has no right to receive payment for any pending bills submitted to GEICO because Millenium Medical unlawfully operated in violation of Florida law.

268.   Millenium Medical has no right to receive payment for any pending bills submitted

66

to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

269. Millenium Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services.

270. Millenium Medical has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

271. Millenium Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided, in order to inflate the charges submitted to GEICO.

272. Accordingly, GEICO requests that this Court enter a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Millenium Medical has no right to receive payment for any of the pending bills submitted to GEICO.

**EIGHTH CAUSE OF ACTION**
**Against Suarez**
**(Violation of RICO – 18 U.S.C. § 1962(c))**

273. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

274. Millenium Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C.

§ 1961(4), that engages in activities that affect interstate commerce.

275.    Suarez has knowingly conducted and/or participated in, directly or indirectly, the conduct of Millenium Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that Millenium Medical was not eligible to receive, because: (i) Millenium Medical operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

276.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

277.    Millenium Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Suarez operated Millenium Medical, inasmuch as Millenium Medical was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Millenium Medical to function. Furthermore, the intricate

planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Millenium Medical continues to attempt collection on the fraudulent billing submitted through Millenium Medical to the present day.

278.    Millenium Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Millenium Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

279.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $143,000.00 pursuant to the fraudulent bills submitted through Millenium Medical.

280.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

### NINTH CAUSE OF ACTION
**Against Suarez, Garcia, and Rosado**
**(Violation of RICO – 18 U.S.C. § 1962(d))**

281.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

282.    Millenium Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

283.    Suarez, Garcia, and Rosado are employed by, or associated with, the Millenium Medical enterprise.

284.    Suarez, Garcia, and Rosado have knowingly agreed, combined, and conspired to

69

conduct and/or participate in, directly or indirectly, the conduct of Millenium Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that Millenium Medical was not eligible to receive under the No-Fault Law, because: (i) Millenium Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

285.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

286.   Suarez, Garcia, and Rosado knew of, agreed to, and acted in furtherance of the common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

287.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $143,000.00 pursuant to the fraudulent bills submitted

70

through the Millenium Medical enterprise.

288.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

## TENTH CAUSE OF ACTION
### Against Millenium Medical, Suarez, Garcia, and Rosado
### (Under Fla. Stat. §§ 501.201 et seq.)

289.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

290.    Millenium Medical, Suarez, Garcia, and Rosado are actively engaged in trade and commerce in the State of Florida.

291.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.23.

292.    Millenium Medical, Suarez, Garcia, and Rosado engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

293.    The bills and supporting documents submitted to GEICO by Millenium Medical, Suarez, Garcia, and Rosado in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Millenium Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed in the first instance.

294.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Millenium Medical, Suarez, Garcia, and Rosado has been materially injurious to GEICO and its Insureds.

71

295. The conduct of Millenium Medical, Suarez, Garcia, and Rosado was the actual and proximate cause of the damages sustained by GEICO.

296. Millenium Medical, Suarez, Garcia, and Rosado's unfair and deceptive acts have caused GEICO to sustain damages of at least $143,000.00.

297. By reason of Millenium Medical, Suarez, Garcia, and Rosado's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

## ELEVENTH CAUSE OF ACTION
### Against Millenium Medical, Suarez, Garcia, and Rosado
### (Common Law Fraud)

298. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

299. Millenium Medical, Suarez, Garcia, and Rosado intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Millenium Medical for the Fraudulent Services.

300. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Millenium Medical was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and were eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the

72

Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

301. Millenium Medical, Suarez, Garcia, and Rosado made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Millenium Medical that were not reimbursable.

302. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by reason of the above-described conduct, in that it has paid at least $143,000.00 pursuant to the fraudulent bills that were submitted by Millenium Medical, Suarez, Garcia, and Rosado through Millenium Medical.

303. Millenium Medical, Suarez, Garcia, and Rosado's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

304. Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

## TWELFTH CAUSE OF ACTION
### Against Millenium Medical, Suarez, Garcia, and Rosado
### (Unjust Enrichment)

305. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

306. As set forth above, Millenium Medical, Suarez, Garcia, and Rosado have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

307. When GEICO paid the bills and charges submitted by Millenium Medical, Suarez,

73

Garcia, and Rosado, it reasonably believed that it was legally obligated to make such payments based on Millenium Medical, Suarez, Garcia, and Rosado's improper, unlawful, and unjust acts.

308.    Millenium Medical, Suarez, Garcia, and Rosado have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Millenium Medical, Suarez, Garcia, and Rosado voluntarily accepted, notwithstanding their improper, unlawful, and unjust billing scheme.

309.    Millenium Medical, Suarez, Garcia, and Rosado's retention of GEICO's payments violates fundamental principles of justice, equity, and good conscience.

310.    By reason of the above, Millenium Medical, Suarez, Garcia, and Rosado have been unjustly enriched in an amount to be determined at trial, but in no event less than $143,000.00.

### THIRTEENTH CAUSE OF ACTION
**Against Vida Medical**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

311.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

312.    There is an actual case in controversy between GEICO and Vida Medical regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Vida Medical.

313.    Vida Medical has no right to receive payment for any pending bills submitted to GEICO because Vida Medical unlawfully operated in violation of Florida law.

314.    Vida Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

315.    Vida Medical has no right to receive payment for any pending bills submitted to

74

GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services.

316.   Vida Medical has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

317.   Vida Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided, in order to inflate the charges submitted to GEICO.

318.   Accordingly, GEICO requests that this Court enter a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Vida Medical has no right to receive payment for any of the pending bills submitted to GEICO.

**FOURTEENTH CAUSE OF ACTION**
**Against Villafranca**
**(Violation of RICO – 18 U.S.C. § 1962(c))**

319.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

320.   Vida Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

321.   Villafranca has knowingly conducted and/or participated in, directly or indirectly, the conduct of Vida Medical's affairs through a pattern of racketeering activity consisting of

repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that Vida Medical was not eligible to receive, because: (i) Vida Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

322. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

323. Vida Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Villafranca operated Vida Medical, inasmuch as Vida Medical was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Vida Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Vida Medical continues to attempt collection on the fraudulent billing submitted through Vida Medical to the present day.

324.     Vida Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Vida Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

325.     GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $212,000.00 pursuant to the fraudulent bills submitted through Vida Medical.

326.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

**FIFTEENTH CAUSE OF ACTION**
**Against Villafranca, Fernandez, and Rosado**
**(Violation of RICO – 18 U.S.C. § 1962(d))**

327.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

328.     Vida Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

329.     Villafranca, Fernandez, and Rosado are employed by, or associated with, the Vida Medical enterprise.

330.     Villafranca, Fernandez, and Rosado have knowingly agreed, combined, and conspired to conduct and/or participate in, directly or indirectly, the conduct of Vida Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over four years, seeking payments that

77

Vida Medical was not eligible to receive under the No-Fault Law, because: (i) Vida Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

331.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

332.    Villafranca, Fernandez, and Rosado knew of, agreed to, and acted in furtherance of the common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

333.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $212,000.00 pursuant to the fraudulent bills submitted through the Vida Medical enterprise.

334.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

## SIXTEENTH CAUSE OF ACTION
### Against Vida Medical, Villafranca, Fernandez, and Rosado
### (Under Fla. Stat. §§ 501.201 et seq.)

335. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

336. Vida Medical, Villafranca, Fernandez, and Rosado are actively engaged in trade and commerce in the State of Florida.

337. GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.23.

338. Vida Medical, Villafranca, Fernandez, and Rosado engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

339. The bills and supporting documents submitted to GEICO by Vida Medical, Villafranca, Fernandez, and Rosado in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Vida Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed in the first instance.

340. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Vida Medical, Villafranca, Fernandez, and Rosado has been materially injurious to GEICO and its Insureds.

341. The conduct of Vida Medical, Villafranca, Fernandez, and Rosado was the actual and proximate cause of the damages sustained by GEICO.

342. Vida Medical, Villafranca, Fernandez, and Rosado's unfair and deceptive acts have caused GEICO to sustain damages of at least $212,000.00.

343. By reason of Vida Medical, Villafranca, Fernandez, and Rosado's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

### SEVENTEENTH CAUSE OF ACTION
**Against Vida Medical, Villafranca, Fernandez, and Rosado**
**(Common Law Fraud)**

344. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

345. Vida Medical, Villafranca, Fernandez, and Rosado intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Vida Medical for the Fraudulent Services.

346. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Vida Medical was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and were eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

347. Vida Medical, Villafranca, Fernandez, and Rosado made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Vida Medical that were not reimbursable.

348.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by reason of the above-described conduct, in that it has paid at least $212,000.00 pursuant to the fraudulent bills that were submitted by Vida Medical, Villafranca, Fernandez, and Rosado through Vida Medical.

349.    Vida Medical, Villafranca, Fernandez, and Rosado's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

350.    Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

## EIGHTEENTH CAUSE OF ACTION
### Against Vida Medical, Villafranca, Fernandez, and Rosado
### (Unjust Enrichment)

351.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

352.    As set forth above, Vida Medical, Villafranca, Fernandez, and Rosado have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

353.    When GEICO paid the bills and charges submitted by Vida Medical, Villafranca, Fernandez, and Rosado, it reasonably believed that it was legally obligated to make such payments based on Vida Medical, Villafranca, Fernandez, and Rosado's improper, unlawful, and unjust acts.

354.    Vida Medical, Villafranca, Fernandez, and Rosado have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Vida Medical, Villafranca, Fernandez, and Rosado voluntarily accepted, notwithstanding their improper, unlawful, and unjust

81

billing scheme.

355. Vida Medical, Villafranca, Fernandez, and Rosado's retention of GEICO's payments violates fundamental principles of justice, equity, and good conscience.

356. By reason of the above, Vida Medical, Villafranca, Fernandez, and Rosado have been unjustly enriched in an amount to be determined at trial, but in no event less than $212,000.00.

### NINETEENTH CAUSE OF ACTION
#### Against Ace Medical
#### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

357. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

358. There is an actual case in controversy between GEICO and Ace Medical regarding more than $75,000.00 in fraudulent and unlawful pending billing that has been submitted to GEICO in the name of Ace Medical.

359. Ace Medical has no right to receive payment for any pending bills submitted to GEICO because Ace Medical unlawfully operated in violation of Florida law.

360. Ace Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were neither lawfully provided nor lawfully billed to GEICO.

361. Ace Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services.

82

362.    Ace Medical has no right to receive payment for any pending bills submitted to GEICO because – in many cases – the Fraudulent Services were never provided in the first instance.

363.    Ace Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided, in order to inflate the charges submitted to GEICO.

364.    Accordingly, GEICO requests that this Court enter a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Ace Medical has no right to receive payment for any of the pending bills submitted to GEICO.

**TWENTIETH CAUSE OF ACTION**
**Against Toledo and Santiago**
**(Violation of RICO – 18 U.S.C. § 1962(c))**

365.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

366.    Ace Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

367.    Toledo and Santiago have knowingly conducted and/or participated in, directly or indirectly, the conduct of Ace Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Ace Medical was not eligible to receive, because: (i) Ace Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services

were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to provide medically necessary treatment to the Insureds who purportedly received and were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

368.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

369.    Ace Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurance companies. The predicate acts of mail fraud are the regular way in which Toledo and Santiago operated Ace Medical, inasmuch as Ace Medical was not engaged in a legitimate health care practice, and acts of mail fraud were, therefore, essential in order for Ace Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that Ace Medical continues to attempt collection on the fraudulent billing submitted through Ace Medical to the present day.

370.    Ace Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Ace Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

371.    GEICO has been injured in its business and property by reason of the above-

described conduct in that it has paid at least $440,000.00 pursuant to the fraudulent bills submitted through Ace Medical.

372. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

## TWENTY-FIRST CAUSE OF ACTION
### Against Toledo, Santiago, and Rosado
### (Violation of RICO – 18 U.S.C. § 1962(d))

373. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

374. Ace Medical is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

375. Toledo, Santiago, and Rosado are employed by, or associated with, the Ace Medical enterprise.

376. Toledo, Santiago, and Rosado have knowingly agreed, combined, and conspired to conduct and/or participate in, directly or indirectly, the conduct of Ace Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit thousands of fraudulent charges on a continuous basis for over five years, seeking payments that Ace Medical was not eligible to receive under the No-Fault Law, because: (i) Ace Medical unlawfully operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that the Fraudulent Services were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than

to provide medically necessary treatment to the Insureds who purportedly were subjected to the Fraudulent Services; (iv) in many cases, the Fraudulent Services were never provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

377.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

378.    Toledo, Santiago, and Rosado knew of, agreed to, and acted in furtherance of the common and overall objective – i.e., to defraud GEICO and other automobile insurers of money – by submitting or facilitating the submission of the fraudulent charges to GEICO.

379.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $440,000.00 pursuant to the fraudulent bills submitted through the Ace Medical enterprise.

380.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

### TWENTY-SECOND CAUSE OF ACTION
**Against Ace Medical, Toledo, Santiago, and Rosado**
**(Under Fla. Stat. §§ 501.201 et seq.)**

381.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

382.    Ace Medical, Toledo, Santiago, and Rosado are actively engaged in trade and

86

commerce in the State of Florida.

383.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. § 501.23.

384.    Ace Medical, Toledo, Santiago, and Rosado engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

385.    The bills and supporting documents submitted to GEICO by Ace Medical, Toledo, Santiago, and Rosado in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Ace Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services were actually performed in the first instance.

386.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Ace Medical, Toledo, Santiago, and Rosado has been materially injurious to GEICO and its Insureds.

387.    The conduct of Ace Medical, Toledo, Santiago, and Rosado was the actual and proximate cause of the damages sustained by GEICO.

388.    Ace Medical, Toledo, Santiago, and Rosado's unfair and deceptive acts have caused GEICO to sustain damages of at least $440,000.00.

389.    By reason of Ace Medical, Toledo, Santiago, and Rosado's conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

**TWENTY-THIRD CAUSE OF ACTION**
**Against Ace Medical, Toledo, Santiago, and Rosado**
**(Common Law Fraud)**

390. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

391. Ace Medical, Toledo, Santiago, and Rosado intentionally and knowingly made false and fraudulent statements of material fact to GEICO, and concealed material facts from GEICO, in the course of their submission of thousands of fraudulent bills through Ace Medical for the Fraudulent Services.

392. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Ace Medical was in compliance with Florida law and was eligible to collect PIP Benefits in the first instance, when, in fact, it was not in compliance with Florida law and was not eligible to collect PIP Benefits in the first instance; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and were eligible for PIP reimbursement, when, in fact, the Fraudulent Services were not lawfully provided and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when, in fact, the Fraudulent Services were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services were actually performed, when, in many cases, the Fraudulent Services were not actually performed.

393. Ace Medical, Toledo, Santiago, and Rosado made the above-described false and fraudulent statements, and also concealed material facts, in a calculated effort to induce GEICO to pay charges submitted through Ace Medical that were not reimbursable.

394. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result, has been injured in its business and property by

88

reason of the above-described conduct, in that it has paid at least $440,000.00 pursuant to the fraudulent bills that were submitted by Ace Medical, Toledo, Santiago, and Rosado through Ace Medical.

395.    Ace Medical, Toledo, Santiago, and Rosado's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

396.    Accordingly, GEICO is entitled to compensatory and punitive damages, together with interest and costs, along with such other and further relief as this Court deems just, proper, and equitable.

### TWENTY-FOURTH CAUSE OF ACTION
**Against Ace Medical, Toledo, Santiago, and Rosado**
**(Unjust Enrichment)**

397.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-218, above.

398.    As set forth above, Ace Medical, Toledo, Santiago, and Rosado have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of GEICO.

399.    When GEICO paid the bills and charges submitted by Ace Medical, Toledo, Santiago, and Rosado, it reasonably believed that it was legally obligated to make such payments based on Ace Medical, Toledo, Santiago, and Rosado's improper, unlawful, and unjust acts.

400.    Ace Medical, Toledo, Santiago, and Rosado have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Ace Medical, Toledo, Santiago, and Rosado voluntarily accepted, notwithstanding their improper, unlawful, and unjust billing scheme.

401.    Ace Medical, Toledo, Santiago, and Rosado's retention of GEICO's payments

violates fundamental principles of justice, equity, and good conscience.

402.    By reason of the above, Ace Medical, Toledo, Santiago, and Rosado have been unjustly enriched in an amount to be determined at trial, but in no event less than $440,000.00.

## JURY DEMAND

403.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against Spine & Sport, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Spine & Sport has no right to receive payment for any pending bills submitted to GEICO.

B.    On the Second Cause of Action against Rodriguez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $550,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

C.    On the Third Cause of Action against Rodriguez, Rosado, and Musoff, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $550,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

D.    On the Fourth Cause of Action against Spine & Sport, Rodriguez, Rosado, and Musoff, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $550,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. §

501.211(2).

E. On the Fifth Cause of Action against Spine & Sport, Rodriguez, Rosado, and Musoff, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $550,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

F. On the Sixth Cause of Action against Spine & Sport, Rodriguez, Rosado, and Musoff, more than $550,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

G. On the Seventh Cause of Action against Millenium Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Millenium Medical has no right to receive payment for any pending bills submitted to GEICO.

H. On the Eighth Cause of Action against Suarez, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $143,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

I. On the Ninth Cause of Action against Suarez, Garcia, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $143,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

J. On the Tenth Cause of Action against Millenium Medical, Suarez, Garcia, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $143,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. §

501.211(2).

K.     On the Eleventh Cause of Action against Millenium Medical, Suarez, Garcia, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $143,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

L.     On the Twelfth Cause of Action against Millenium Medical, Suarez, Garcia, and Rosado, more than $143,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

M.     On the Thirteenth Cause of Action against Vida Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Vida Medical has no right to receive payment for any pending bills submitted to GEICO.

N.     On the Fourteenth Cause of Action against Villafranca, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $212,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

O.     On the Fifteenth Cause of Action against Villafranca, Fernandez, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $212,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

P.     On the Sixteenth Cause of Action against Vida Medical, Villafranca, Fernandez, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $212,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat.

§ 501.211(2).

Q.      On the Seventeenth Cause of Action against Vida Medical, Villafranca, Fernandez, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $212,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

R.      On the Eighteenth Cause of Action against Vida Medical, Villafranca, Fernandez, and Rosado, more than $212,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

S.      On the Nineteenth Cause of Action against Ace Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Ace Medical has no right to receive payment for any pending bills submitted to GEICO.

T.      On the Twentieth Cause of Action against Toledo and Santiago, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $440,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

U.      On the Twenty-First Cause of Action against Toledo, Santiago, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $440,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), plus interest, along with such other and further relief as this Court deems just, proper, and equitable.

V.      On the Twenty-Second Cause of Action against Ace Medical, Toledo, Santiago, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but

in excess of $440,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. § 501.211(2).

W.     On the Twenty-Third Cause of Action against Ace Medical, Toledo, Santiago, and Rosado, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $440,000.00, together with punitive damages, costs, and interest, along with such other and further relief as this Court deems just, proper, and equitable.

X.     On the Twenty-Fourth Cause of Action against Ace Medical, Toledo, Santiago, and Rosado, more than $440,000.00 in compensatory damages in favor of GEICO, plus costs and interest, along with such other and further relief as this Court deems just, proper, and equitable.

Dated: November 11, 2025

*/s/ Max Gershenoff*

Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
RIVKIN RADLER LLP
1301 Riverplace Blvd., 10th Floor
Jacksonville, Florida 32207
Phone: (904) 792-8925

-and-

926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Lindsey.Trowell@rivkin.com
Kristen.Wenger@rivkin.com

*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO Insurance Company, and GEICO Casualty Co.*