**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-25241-BLOOM/Elfenbein

**GOVERNMENT EMPLOYEES**
**INSURANCE CO.**, *et al*,

      Plaintiff,

 v.

**MILLENIUM MEDICAL**
**GROUP, CORP.**, *et al*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants Spine & Sport Rehab, Inc. ("SSR") and

Giovanni Rodriguez's ("Rodriguez") (collectively, "SSR Defendants") Motion to Dismiss

Plaintiff's Complaint (the "Motion to Dismiss"). *See* ECF No. [37]. The Honorable Beth Bloom

referred the Motion to Dismiss to me for a Report and Recommendation. *See* ECF No. [53]. For

the reasons explained below, I respectfully **RECOMMEND** that the Motion to Dismiss, **ECF No.**

**[37]**, be **DENIED**.

### I.     BACKGROUND

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively, "Plaintiffs") filed this action against

SSR Defendants along with Defendants Millenium Medical Group, Corp. ("Millenium Medical"),

Damarys Suarez a/k/a Damarys Quiriello ("Suarez"), Michel Bormey Garcia, M.D. ("Garcia"),

Roy Christy Musoff, M.D. ("Musoff"), Vida Medical Rehab Corp. ("Vida Medical"), Pedro

Herrera Villafranca, L.M.T. ("Villafranca"), Nestor Fernandez, M.D. ("Fernandez"), Ace Medical

& Rehab Center Inc. ("Ace Medical"), Yanirma Toledo ("Toledo"), Lensky J. Hernandez Santiago, L.M.T. ("Santiago"), and Norine Del Carmen Rosado, M.D. ("Rosado") (collectively, the "Defendants"). *See* ECF No. [1] at 1-2. Plaintiffs seek to recover more than $1,345,000.00, alleging that the respective Defendants wrongfully obtained these proceeds by submitting thousands of fraudulent and unlawful no-fault, personal injury protection ("PIP") insurance charges through four Florida healthcare clinics, consisting of Defendants SSR, Millenium Medical, Vida Medical, and Ace Medical (collectively, the "Clinic Defendants"). *See id*. at ¶¶1, 5–6. Additionally, Plaintiffs seek a declaration that they are not legally obligated to pay reimbursements of more than $75,000.00 in pending fraudulent and unlawful PIP claims submitted through those same clinics. *See* ECF No. [1] at ¶2.

Plaintiffs allege that each of the four Clinic Defendants operated the same core scheme — a non-physician clinic owner[1] recruited and compensated a licensed physician to falsely pose as the clinic's medical director[2] under Florida's Health Care Clinic Act, Fla. Stat. §§ 400.990 *et seq.* (the "Clinic Act"), while ceding all true decision-making authority back to the owner, thereby enabling the clinic to submit large amounts of fraudulent and unlawful PIP charges to Plaintiffs and other insurers. *See* ECF No. [1] at ¶¶3(i), 8-21, 60-67. Specifically, as to the SSR Defendants, Plaintiffs allege that Rodriguez, who holds no healthcare license, owned and controlled SSR and retained first Rosado and then Musoff as sham Medical Directors. *See id*. at ¶¶62, 64(i), 67, 71-73. Plaintiffs further allege that across all four clinics, the Medical Directors never conducted

---

[1]The Complaint alleges that Rodriguez owned SSR, Suarez owned Millenium Medical, Villafranca owned Vida Medical, and Toledo and Santiago owned Ace Medical (collectively, "Clinic Owners"). *See id*. at ¶¶9-10, 12-13, 15-16, 18-20.

[2] The Complaint alleges that Rosado posed as a medical director for all Clinic Defendants, Musoff posed as a medical director for SSR, Garcia posed as a medical director for Millenium Medical, and Fernandez posed as a medical director for Vida Medical (collectively, "Medical Directors"). *See id*. at ¶¶8, 11, 14, 17.

systematic billing reviews, never ensured that treating practitioners were properly licensed, and were only occasionally present at their respective clinics — and that Rosado, who simultaneously held the medical director title at all four clinics during overlapping periods, was the common thread connecting each enterprise. *See* ECF No. [1] at ¶¶71–79.

Against that structural backdrop, Plaintiffs allege that Defendants engaged in three categories of fraudulent billing at each clinic: (1) upcoded initial and follow-up examinations billed under CPT codes 99203 and 99213 that misrepresented the severity of patients' presenting problems, the time spent, and the complexity of medical decision-making; (2) "physical therapy" services that were performed by massage therapists and unlicensed or unsupervised individuals — including Paul M. Aiello, L.M.T. ("Aiello") at SSR — but billed as though performed or supervised by licensed physicians, in violation of the Florida Motor Vehicle No-Fault Law's, Fla. Stat. §§ 627.730–627.7405 (the "No-Fault Law") categorical prohibition on PIP reimbursement for services rendered by massage therapists; and (3) a clinic-wide practice of waiving patient deductibles in violation of Florida's False and Fraudulent Insurance Claims Statute ("FFIC"), Fla. Stat. § 817.234(7), which independently rendered all charges non-compensable. *See* ECF No. [1] at ¶¶96–101, 107-211.

Based on these allegations, Plaintiffs bring the same six-count structure for each group of Clinic Defendants and their respective non-physician Clinic Owner(s) and Medical Director(s). Specifically, as to the SSR Defendants, Plaintiffs bring claims for: (1) Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 for a declaration against SSR that Plaintiffs owe nothing on outstanding PIP bills (Count I); (2) violation of the Racketeer Influenced and Corrupt Organizations ("RICO") under 18 U.S.C. § 1962(c) against Rodriguez as the person conducting the enterprise through mail fraud, which is the alleged predicate act (Count II); (3) violation of

RICO under § 1962(d) against Rodriguez (and Rosado and Musoff) for conspiracy to commit mail fraud, which is the alleged predicate act (Count III); (4) violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Fla. Stat. §§ 501.201 against the SSR Defendants (and Rosado and Musoff) for the fraudulent bills and supporting documents sent to Plaintiffs (Count IV); (5) Common Law Fraud against the SSR Defendants (and Rosado and Musoff) (Count V); and (6) Unjust Enrichment against the SSR Defendants (and Rosado and Musoff) (Count VI). *See id*. at ¶¶219-402. The remaining counts in the Complaint are directed at the other Clinic Defendants, Clinic Owners, and Medical Directors, so they are not at issue in the Motion to Dismiss.

On December 23, 2025, the SSR Defendants moved to dismiss the Complaint in its entirety arguing that it fails to satisfy both Rule 8(a)(2)'s plausibility standard and Rule 9(b)'s heightened fraud pleading requirements. *See* ECF No. [37]. First, the SSR Defendants argue that Plaintiffs' own Exhibit 3 establishes that the examination codes it challenges — CPT codes 99203 and 99213 — "appear only 83 and 41 times, respectively, out of more than 12,000 total line items[,]" representing less than one-half of one percent of SSR's total charges over more than six years, which renders Plaintiffs' allegation that every charge submitted by SSR has been fraudulent and unlawful arithmetically implausible on the face of the Complaint itself. *See* ECF No. [37] at 2–3, 11–12. Second, the SSR Defendants argue that the Complaint impermissibly lumps the SSR Defendants together with the other Clinic Defendants, incorporating more than 200 paragraphs of generalized multi-clinic allegations into its claims against SSR without distinguishing SSR's conduct from that of unrelated clinics. *See id*. at 9-10. Specifically, Plaintiffs incorporate the substantial narrative to PENS billing under CPT code 64999 and other alleged misconduct that Plaintiffs' own Exhibit 3 confirms SSR never engaged in. *See id*.

Third, the SSR Defendants argue that the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard because it does not identify the specific fraudulent statements made, the specific individuals at SSR who made them, the specific times and circumstances of each misrepresentation, or the manner in which each statement misled Plaintiffs, instead relying on generalized assertions about conduct spanning years of billing without claim-level specificity. *See* ECF No. [37] at 10–11. Fourth, as to the declaratory judgment claim, the SSR Defendants argue that Plaintiffs have failed to allege a justiciable controversy or substantial likelihood of future injury because the Complaint is based on historical billing practices and fails to identify ongoing or imminent conduct. *See id*. ay 12-13. The SSR Defendants specifically reference the CPT 64999 billing code, stating that it "never occurred at SSR at all." *See id*. at 13. Independently, the SSR Defendants argue that declaratory relief is unavailable because Plaintiffs possess an adequate remedy at law through Florida's PIP statutory scheme, which already permits insurers to deny, reduce, or recode claims pursuant to Fla. Stat. § 627.736. *See* ECF No. [37] at 13–14.

Fifth, as to the RICO claims, the SSR Defendants argue that Plaintiff failed to plead every element of a RICO claim, but they only substantiate this argument as to the enterprise element. *See id*. at 14-15. The SSR Defendants contend that the RICO enterprise element is fatally defective because Plaintiffs simultaneously designate each of the four Clinic Defendants as a separate RICO enterprise in different paragraphs of the Complaint — alleging SSR as the enterprise at paragraph 236, Millenium Medical at paragraph 274, Vida Medical at paragraph 320, and Ace Medical at paragraph 366 — without alleging any connection among them. *See id*. The SSR Defendants aver that this approach does not constitute a permissible pleading of alternative enterprise theories, but rather a wholesale failure to plead the enterprise element at all. *See id*. Additionally, the RICO enterprise allegations fail, according to the SSR Defendants, because Plaintiffs fail to distinguish

the enterprise's existence as being separate from the racketeering activity. *See id*. at 15.

Sixth, the SSR Defendants argue that the FDUTPA claim fails on three independent grounds. *See id*. at 16-17. They contend that Plaintiffs have not plausibly alleged a deceptive act or unfair practice because the Complaint describes routine billing for conservative post-accident treatment that Plaintiffs plead is the appropriate and expected standard of care for soft-tissue injuries, and that Plaintiffs' own Exhibit 3 — showing that the challenged billing represents less than one-half of one percent of SSR's total charges — forecloses any characterization that SSR was engaging in a pattern of deceptive or unfair conduct. *See id*. at 16. Next, the SSR Defendants argue that FDUTPA does not apply because Florida's No-Fault Law expressly regulates the challenged conduct — PIP billing, coding, and medical necessity determinations — and Florida courts have held that FDUTPA "does not reach conduct specifically regulated by law." *See id*. Finally, the SSR Defendants argue that Plaintiffs fail to plead actual damages because FDUTPA damages are measured by the difference in market value between what was received and what should have been received, and Plaintiffs do not allege that the services were valueless or never performed. *See id.* at 16–17.

Seventh, the SSR Defendants argue that the fraud and unjust enrichment claims fail for both overlapping and independent reasons. *See id*. at 17. They state the fraud claim fails because the Complaint does not identify a particular claim submission that was false at the time it was made, any misrepresentation of services not rendered, and is devoid of any facts showing that any statement was knowingly false when submitted. *See id*. The SSR Defendants further contend that Plaintiffs' own Exhibit 3 forecloses any inference of fraudulent intent given that the challenged billing represents less than one-half of one percent of SSR's total charges. *See id.* at 17–18. The SSR Defendants additionally argue that fraud cannot lie where Plaintiffs plead that the treatments

6

at issue are the appropriate treatments for soft-tissue injuries, because a provider does not commit fraud by delivering and billing for the very care the insurer concedes should have been provided. *See id.* at 18.  Finally, as to unjust enrichment, the SSR Defendants argue that the claim fails because unjust enrichment is an equitable remedy unavailable where a contract governs the Parties' relationship, and that under Florida's PIP scheme, SSR's rights derive from assignments of benefits issued pursuant to Plaintiffs' insurance contracts with its insureds — making any dispute between them contractual in nature, not equitable.  *See id.* at 18–19.

On January 6, 2026, Plaintiffs filed their Memorandum in Opposition to the Motion to Dismiss (the "Response").  *See* ECF No. [49].  First, as to plausibility, Plaintiffs respond that the SSR Defendants' plausibility argument rests on the mistaken premise that Plaintiffs challenge only the examination-code billing, when in fact the Complaint separately alleges that unlicensed physical therapy billing constituted the majority of the SSR Defendants' billing and that the sham medical directors' operations render every charge non-compensable regardless of the type of service billed.  *See* ECF No. [49] at 11–13.  Second, as to group pleading, Plaintiffs argue that any fair reading of the Complaint leaves the SSR Defendants with no doubt as to their individual roles, given that Rodriguez is specifically alleged to have owned and controlled SSR, to have directed the fraudulent billing through that clinic, and to have acted in concert with first Rosado and then Musoff to submit fraudulent billing to Plaintiffs.  *See* ECF No. [49] at 10–11.  Plaintiffs further note that the Complaint makes clear that only the Ace Medical Defendants, and not the SSR Defendants, are alleged to have submitted fraudulent PENS billing, and that the SSR Defendants' argument on this point, therefore, mischaracterizes the Complaint.  *See id.* at 11 n.1.

Third, as to Rule 9(b), Plaintiffs argue that the Complaint satisfies the heightened pleading standard for fraud by alleging detailed facts establishing the who, what, when, where, and why of

7

the SSR Defendants' fraudulent conduct — specifically, that Rodriguez, together with Rosado and then Musoff, caused SSR to operate in violation of the Clinic Act, the Fraudulent Insurance Claims Statute, and the Physical Therapy Act, and used SSR to submit fraudulent PIP billing via the mail misrepresenting the nature, extent, results, and medical necessity of the underlying services. *See id*. at 8-9. These allegations, Plaintiffs contend, are further supported by the billing chart in Exhibit 1, which identifies thousands of individual fraudulent claims by service type, service date, mailing date, dollar amount, and the SSR Defendants' own claim numbers. *See id*. Plaintiffs also cite several cases from this Circuit that have repeatedly found PIP fraud complaints pleaded at a similar level of detail sufficient to satisfy Rule 9(b). *See id.* at 9–10.

Fourth, as to the declaratory judgment claim, Plaintiffs argue that the claim is well-established under binding Eleventh Circuit precedent recognizing that a plaintiff-insurer is entitled to seek a declaration that it need not pay fraudulent or unlawful PIP billing, and that the SSR Defendants' authorities are inapposite because they did not involve the same type of declaratory relief sought here. *See* ECF No. [49] at 13–15. Plaintiffs further contend that the Complaint alleges more than $75,000.00 in pending, unpaid SSR billing, which constitutes a live and justiciable controversy, and that the existence of an adequate remedy at law does not preclude declaratory relief under Federal Rule of Civil Procedure 57. *See* ECF No. [49] at 14–15.

Fifth, as to the RICO claims, Plaintiffs respond that the RICO claims are adequately pled on all challenged elements: the predicate acts of mail fraud are pleaded with particularity and courts in this Circuit have denied motions to dismiss substantially similar RICO pleadings; the Complaint's allegation that the SSR Defendants mailed thousands of fraudulent PIP claims to Plaintiffs on a continuous basis for more than four years satisfies the pattern and continuity requirements; and the enterprise element is met because SSR — a corporation — is itself a

cognizable RICO enterprise under 18 U.S.C. § 1961(4). *See id*. at 15-16. Plaintiffs also clarify that they do not allege a single association-in-fact enterprise spanning all four clinics but rather that each clinic constitutes its own separate corporate enterprise. *See id*. at n.4.

Sixth, as to FDUTPA, Plaintiffs respond that a large body of authority sustaining substantially similar claims in this Circuit support the FDUTPA claim, and that the SSR Defendants' three arguments lack merit. *See id*. at 17–19. As to deceptive conduct, Plaintiffs contend that fraudulent PIP billing qualifies as a deceptive act under FDUTPA and that the SSR Defendants' conduct constitutes an unfair practice. *See id.* at 17. As to the statutory exemption argument, Plaintiffs contend that Florida's PIP insurance regime does not govern the SSR Defendants' deceptive practices because it has no application to an insurer's affirmative FDUTPA claims seeking to recover payments already made as a result of a defendant's deceptive conduct, and that courts in this Circuit have rejected the argument that FDUTPA claims of this type interfere with Florida's No-Fault regulatory scheme. *See id.* at 17-18. As to actual damages, Plaintiffs argue that because SSR operated in violation of Florida law and was never eligible for reimbursement, the value of its services as delivered was zero, making approximately $550,000.00 paid by Plaintiffs cognizable actual damages under FDUTPA. *See id.* at 18–19.

Seventh, Plaintiffs respond that the fraud claim is not based on hindsight disagreement over coding or medical necessity, but rather on the SSR Defendants' systematic misrepresentation of the nature, extent, results, and medical necessity of their services and their eligibility to collect PIP payments in the first instance. *See id*. at 19. Plaintiffs argue that contrary to the SSR Defendants' characterization — Plaintiffs do not plead that the conservative modalities were lawfully rendered and medically necessary, but rather expressly allege that they were medically unnecessary, unlawfully rendered, in some cases illusory, and ineligible for PIP reimbursement in the manner

9

in which they were provided and billed. *See id.* (citing ECF No. [1] at ¶¶ 168–169, 173–185). As to unjust enrichment, Plaintiffs contend that the claim is properly pled in the alternative, that courts in this Circuit have rejected the adequate-remedy argument in analogous PIP fraud cases, and that the SSR Defendants are not in any express contractual relationship with Plaintiffs because an assignment of PIP benefits does not create a direct contract between an insurer and a healthcare provider. *See id.* at 20.

The SSR Defendants thereafter filed their Reply in further support of their Motion to Dismiss. *See* ECF No. [52]. As to the string-cite authority Plaintiffs rely upon to oppose dismissal, the SSR Defendants argue that Plaintiffs' reliance on a lengthy list of cases that allegedly survived motions to dismiss should be flatly rejected because each case is heavily fact-intensive, several are not available on Westlaw, and some are default judgments. *See* ECF No. [52] at 1–2. As to Rule 9(b), the SSR Defendants argue that the paragraphs Plaintiffs cite consist largely of general allegations and assertions that otherwise lack the requisite particularity as to the SSR Defendants. *See* ECF No. [52] at 2. As to group pleading, the SSR Defendants acknowledge that Plaintiffs dispute the lumping argument but maintain that the sheer volume of paragraphs collectively grouping the Defendants together fails to give SSR fair notice of its individual role, and that cases Plaintiffs cite in support — which involved complaints that were otherwise sufficiently specific — are distinguishable from the Complaint here. *See id.* at 2–3. As to plausibility, the SSR Defendants argue that Plaintiffs do not legitimately dispute that its allegation that every charge submitted by SSR since 2019 has been fraudulent is both conclusory and contradicted by Exhibit 3, and that Plaintiffs' clarification that the broader allegation refers to violations of the Clinic Act and the Fraudulent Insurance Claims Statute appears nowhere in the Complaint itself. *See id.* at 2-3.

Turning to the declaratory judgment claim, the SSR Defendants maintain that Plaintiffs have an adequate remedy at law and that its authorities are inapposite, without addressing the Eleventh Circuit precedent Plaintiffs cited in opposition. *See id.* at 3.   Regarding the RICO enterprise element, the SSR Defendants argue that Plaintiffs' Response, arguing that each clinic corporation is itself a separate enterprise, is not what the Complaint actually alleges, and that Plaintiffs never specifically plead that each clinic corporation is its own RICO enterprise, making the clarification an impermissible attempt to amend the Complaint through briefing. *See id.* at 3-4.  As to FDUTPA, the SSR Defendants argue that Plaintiffs do not dispute that the challenged conduct is regulated under separate laws and therefore falls within the statutory exemption, and that Plaintiffs fail to allege how "Insureds" sustained any alleged damages. *See id.* at 4.  And finally, as to unjust enrichment, the SSR Defendants argue that the Complaint nowhere states that the unjust enrichment claim is pled in the alternative, and that Plaintiffs have not alleged — either in the Complaint or otherwise — the absence of an adequate remedy at law, which is required where a plaintiff also alleges the existence of a contract. *See id.* at 5–6.

## II.      LEGAL STANDARDS

### A.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b), a party may move to dismiss a claim on several bases, including a "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted, quotation marks omitted).  "Factual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and footnote omitted). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted, quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (alteration adopted, citation and quotation marks omitted).

"Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party." *Campos v. INS*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998); *see also Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (noting that there "are a few exceptions to" the rule requiring

courts to accept a complaint's allegations as true, "such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice"). When performing this analysis, the court may consider the complaint itself along with any "documents attached to" it "or incorporated in the complaint by reference." *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014).

### B. Pleading Requirements

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Along with that substance, a pleading must also conform to certain format requirements. *See* Fed. R. Civ. P. 10. Those substance and format requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Iqbal*, 556 U.S. at 678, to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *see Twombly*, 550 U.S. at 570 (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings.[3] *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). The Eleventh Circuit has identified at least four different types of shotgun pleadings, including complaints that "contain[] multiple counts where each count adopts the allegations of all

---

[3] A shotgun pleading is one that "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a responsi[ve] pleading constitutes shotgun pleading.").

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" and complaints that do "not separat[e] into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1321–23 (footnotes omitted). It has also "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are altogether unacceptable."). If the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *see Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *see Jackson*, 898 F.3d at 1357.

"Ordinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). But leave to amend is not warranted when there has been a "repeated failure to cure deficiencies

by amendments previously allowed" and "where amendment would be futile." *See id.* (quotation marks omitted); *Miccosukee Tribe of Indians of Fla. v. Jewel*, 996 F. Supp. 2d 1268, 1274–75 (S.D. Fla. 2013).  In that case, dismissal with prejudice is warranted.  *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137–38 (11th Cir. 2019); *Jewel*, 996 F. Supp. 2d at 1274–75.

## C.    Substantive Law of the Claims and Defenses

### 1.   Declaratory Judgment

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in cases "of actual controversy within" their jurisdictions.  *See* 28 U.S.C. § 2201(a).  "In all cases arising under the Declaratory Judgment Act," the "threshold question is whether a justiciable controversy exists."  *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995).  "The party who invokes a federal court's authority must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition."  *Id.* (quotation marks omitted); *see also Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 263 F. Supp. 3d 1278, 1279 (S.D. Fla. 2015).  "At a minimum, a claim for declaratory judgment must be supported by allegations from which a substantial continuing controversy may reasonably be inferred."  *Addison*, 263 F. Supp. 3d at 1279–80.

15

A district court's ability to grant relief under the Act is permissive because, while the Act allows federal courts to make a declaration of rights, "it does not impose a duty to do so." *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). Courts have "exceptionally broad discretion in deciding whether to issue a declaratory judgment." *See Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

"Declaratory judgment claims that functionally seek adjudication on the merits of a breach of contract claim are duplicative and cannot stand." *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1322 (S.D. Fla. 2021). "Declaratory judgment claims may properly coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim." *Id.* (quotation marks omitted). "Such claims for declaratory judgment must be forward-looking, rather than retrospective, as any retrospective declaration would be equally solved by resolution of the breach of contract claim." *Id.*; *see also Cooseman's Miami, Inc. v. Aspen Specialty Ins. Co.*, No. 22-CV-23264, 2023 WL 315803, at *2 (S.D. Fla. Jan. 19, 2023).

Still, other courts in this Circuit have found "that redundancy is not grounds for dismissal under Rule 12(b)(6) for failure to state a claim." *Collaboration Betters the World, Inc. v. Hertz Corp.*, No. 23-CV-131-JES-KCD, 2023 WL 4705837, at *4 (M.D. Fla. July 24, 2023). They have done so because the "federal Declaratory Judgment Act and Rule 57 allow for a declaratory judgment even if there is another adequate remedy" and because "even assuming Plaintiff's declaratory judgment claims are redundant of the breach of contract claims, a motion to dismiss

16

tests a claim's plausibility — not redundancy." *See Tiro Beachwear Inc. v. Foremost Ins. Co.*, No. 20-CV-425-ORL-22-DCI, 2020 WL 5983830, at *3 (M.D. Fla. Apr. 8, 2020) (quotation marks omitted). For those reasons, "[w]hile some courts dismiss claims for declaratory relief where the plaintiff alleges a parallel breach of contract claim, others allow the declaratory claim to travel with the breach of contract claim." *See United Church of Marco Island, Inc. v. Lexington Ins. Co.*, No. 23-CV-331-JES-KCD, 2023 WL 4865729, at *2 (M.D. Fla. July 31, 2023) (quotation marks omitted).

Courts that have allowed the declaratory claim to stand with the breach-of-contract claim have noted "that there is no additional burden" in defending both claims because if "the declaratory judgment claim is subsumed by the breach of contract claim, there will be no additional discovery" required that is specific to the declaratory claim. *See Tiro*, 2020 WL 5983830, at *3. They have also theorized that "this issue may be better addressed at the summary judgment stage, after discovery is completed." *Id.*

## 2. RICO

"A plaintiff suing under the 'civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff.'" *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1196 (11th Cir. 2025), *cert. denied,* No. 25-391, 2026 WL 80015 (U.S. Jan. 12, 2026) (quoting *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020)). "The RICO statute is to 'be liberally construed to effectuate its remedial purposes.'" *Id*. (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) (internal citation omitted). Subsection (c) of Section § 1962 makes it unlawful "for any person employed by or associated with any enterprise engaged in . . .

17

interstate or foreign commerce" to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *See* 18 U.S.C. § 1964. And Section (d) makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id*.

As one of the many elements of a civil RICO claim, a plaintiff must "allege a pattern of racketeering activity," which in part requires showing "the defendants committed two or more predicate acts within a ten-year time span." *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007) ("[A]bsent any valid predicate acts, [a party] cannot state a claim for RICO violations."). The term "racketeering activity," in turn, covers multiple predicate acts, including "any act which is indictable under . . . section 1341 (relating to mail fraud)..." 18 U.S.C. § 1961(1)(B). "'Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991)). "In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *Id*. at 1290-91 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). "'A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.'" *Id*. at 1291 (quoting *H.J. Inc.*, 492 U.S. at 242).

When the alleged racketeering predicates are mail or wire fraud, Eleventh Circuit precedent requires the RICO allegations to also satisfy Rule 9(b) particularity. *See id*. ("Because Plaintiffs' section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the

predicate acts of mail and wire fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard. . .").

RICO defines an "enterprise" to include both legal entities and "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). When the alleged enterprise is an association in fact, the complaint must plausibly allege "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Eleventh Circuit likewise requires allegations showing "that the participants shared the purpose of enriching themselves through a particular criminal course of conduct[,]" which extends further than "the ultimate purpose of making money for themselves[.]" *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

Relatedly, § 1962(c) requires a distinction between the RICO "person" and the RICO "enterprise." "It is well established that a RICO enterprise must be an entity separate and distinct from any individual defendant -- a person cannot conspire with itself." *Cisneros*, 972 F.3d at 1215 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). "Thus, 'plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation.'" *Id*. (quoting *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016)).

### 3. FDUTPA

"To assert a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (citing *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073

19

(Fla. 5th DCA 2008)).  "An unfair practice is 'one that offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (quoting *Samuels v. King Motor Co. of Fort Lauderdale,* 782 So. 2d 489, 499 (Fla. 4th DCA 2001)) (internal quotations omitted).  FDUTPA damages are measured by the difference in market value between what was received and what should have been received.  *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (quoting *Rollins, Inc. v. Heller,* 454 So. 2d 580, 585 (Fla. 3d DCA 1984)). "For purposes of recovery under FDUTPA, 'actual damages' do not include consequential damages."  *Id*. (quoting *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998)).

### 4.   Common Law Fraud

"[T]here are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis,* 480 So. 2d 625 (Fla.1985)).  In doing so, Rule 9(b) requires that plaintiffs "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1267 (S.D. Fla. 2021) (plaintiffs "must meet the heightened pleading standard of Rule 9(b)").

Specifically, plaintiffs "must allege precisely what statements were made, the time and place of each such statement and the person responsible for making it, the content of such statements and the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud."  *See Francois*, 565 F. Supp. 3d at 1267 (quotation marks and citation

omitted); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir. 1997)) (internal quotation marks omitted). Even so, the "elements of fraud — particularly including intent and knowledge — may be, and often are, proven by circumstantial evidence." *See Glob. Quest, LLC v. Nakton Corp.*, 849 F.3d 1022, 1030 (11th Cir. 2017). "With respect to the rule of justifiable reliance," the Eleventh Circuit has said that "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty[,] it is unreasonable to rely on representations made by the allegedly dishonest parties." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117–18 (11th Cir. 1999) (alteration adopted, quotation marks omitted).

### 5.  Unjust Enrichment

"Under Florida law, a claim for unjust enrichment is to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (quotation marks omitted). The Eleventh Circuit, applying Florida law, states that "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park,* 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.,* 668 So. 2d 205, 207 (Fla. 2d DCA 1995))); *Marrache*, 17 F.4th at 1101.

Moreover, the Florida Supreme Court states that "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818

(Fla. 2017) (citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996)); *see also Ritchie v. Dolman*, No. 20-CV-61047, 2020 WL 8812834, at *15 (S.D. Fla. Dec. 10, 2020); *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018); *cf. Hull & Co., Inc. v. Thomas*, 834 So. 2d 904, 907 (Fla. 4th DCA 2003). "This proposition is well-settled in Florida law." *Chiquita Fresh N. Am., L.L.C. v. Port Everglades Terminal, LLC*, 372 So. 3d 277, 281 (Fla. 4th DCA 2023) (collecting cases); *see also Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (recognizing that to bring an unjust enrichment claim in Florida, the plaintiff must have conferred a "direct benefit" on the defendant); *Steven L. Steward & Assocs., P.A. v. Truist Bank*, No. 20-CV-1083-Orl-40-GJK, 2020 WL 5939150, at *2 (M.D. Fla. Oct. 6, 2020) (following *Kopel* and *Peoples Nat'l Bank*).

## III.   DISCUSSION

The SSR Defendants' Motion to Dismiss raises seven distinct arguments for dismissal, which the Court addresses in turn. The Court first addresses the threshold plausibility challenge under Rule 8(a)(2), including the SSR Defendants' contention that Plaintiffs' own exhibits arithmetically defeat its "all charges fraudulent" theory. The Court then turns to the SSR Defendants' argument that the Complaint constitutes an impermissible group pleading and fails to satisfy Rule 9(b)'s heightened particularity requirements for fraud-based claims. Next, the Court addresses the sufficiency of the declaratory judgment claim, followed by the sufficiency of the civil RICO claims under 18 U.S.C. §§ 1962(c) and (d), including the enterprise, predicate act, and continuity elements. The Court then addresses the FDUTPA claim, including the SSR Defendants' statutory exemption and actual damages arguments, before turning to the common law fraud and unjust enrichment claims. For the reasons set forth below, the Court recommends that the Motion

to Dismiss, **ECF No. [37]**, be **DENIED**.

### A.      Rule 8(a)(2) Plausibility

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true," *Iqbal*, 556 U.S. at 678, to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 570.  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  With that standard in mind, the Court addresses each of the SSR Defendants' three plausibility arguments.

Their first argument is that Plaintiffs' "all charges are fraudulent" theory is arithmetically implausible because Plaintiffs' own Exhibit 3 shows that the challenged examination codes — CPT codes 99203 and 99213 — represent less than one-half of one percent of SSR's total charges.  *See* ECF No. [37] at 2–3, 11–12.  The SSR Defendants contend that where a plaintiff's exhibits contradict its allegations, the exhibits control, and that Exhibit 3 therefore defeats Plaintiffs' sweeping "all charges are fraudulent" theory.  *See id*.  As applied to the examination-code theory in isolation, the SSR Defendants' arithmetic point carries some weight — Plaintiffs' own data shows that the specific codes it challenges represent a negligible fraction of SSR's total billing, and a fraud theory premised solely on those codes would struggle to support the sweeping allegation that every SSR charge since 2019 was fraudulent.

The SSR Defendants' argument, however, fundamentally mischaracterizes the scope of the Complaint's fraud theory.  Plaintiffs do not predicate its "all charges are fraudulent" allegation solely — or even primarily — on the examination codes.  Rather, the Complaint advances two independent and structurally broader theories of universal non-compensability that apply to every

23

charge SSR submitted, regardless of service type.  *See* ECF No. [1] at ¶¶30–41, 61–67, 71–73, 77–83, 173–187, 206–211.  The Complaint alleges that SSR operated in pervasive violation of the Clinic Act from its inception because Rodriguez retained Rosado and then Musoff to falsely pose as medical directors while ceding all genuine decision-making authority back to him, such that neither physician ever conducted systematic billing reviews, ensured practitioner licensure compliance, or provided the day-to-day supervision the Clinic Act requires.  *See id.* at ¶¶62–67, 71–73, 77–83.  Under Fla. Stat. § 400.9935(3), a clinic operating in violation of the Clinic Act renders every charge it submits an unlawful charge that is non-compensable and unenforceable as a matter of law — without regard to whether any individual claim was substantively inflated or whether the underlying services were actually rendered.  *See* ECF No. [1] at ¶¶38–39; *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.*, 446 F. Supp. 3d 1032, 1049-52 (S.D. Fla. 2020) *affirmed in pertinent part*,  No. 20-13319, 2022 WL 413417 at *5-7 (11th Cir. Feb. 10, 2022).

Additionally, the Complaint separately alleges that the physical therapy services, which constituted the majority of SSR's billing, were performed entirely by Aiello, a licensed massage therapist, and billed as though performed or supervised by licensed physicians, in categorical violation of the No-Fault Law's prohibition on PIP reimbursement for services performed by massage therapists.  *See* ECF No. [1] at ¶¶169, 175, 183–184; Fla. Stat. § 627.736(1)(a)(5).  Each of these theories independently supports Plaintiffs' allegation that every SSR charge was non-compensable, and neither turns on how frequently CPT codes 99203 and 99213 appear in the billing data.  Accordingly, the SSR Defendants' examination-code frequency argument does not defeat the plausibility of Plaintiffs' claims.

The SSR Defendants' second plausibility argument is that Plaintiffs' own Complaint defeats its fraud theory by expressly pleading, at paragraph 158, that the conservative treatment

modalities at issue are the appropriate standard of care for the soft-tissue injuries for which they were prescribed. *See* ECF No. [37] at 11–12, 17–18. The SSR Defendants contend that a provider cannot commit fraud by delivering and billing for the very care the insurer concedes should have been provided, and that Plaintiffs' acknowledgment of this renders implausible any allegation that the physical therapy billing was fraudulent. *See id.* This argument conflates the appropriateness of a treatment modality with the lawfulness of a specific provider's performance and billing of that same modality, and the Court is not persuaded by it.

The Complaint does not allege that conservative physical therapy modalities are inherently fraudulent or medically inappropriate as a category. Rather, Plaintiffs allege that these services were fraudulent and unlawful in the specific manner in which they were provided at and billed by SSR — namely, because they were performed by a massage therapist who was categorically ineligible to perform or be reimbursed for physical therapy services under Florida law, and because the billing forms falsely identified licensed physicians as the performers or supervisors of those services. *See* ECF No. [1] at ¶¶173–187. The fact that the treatments provided were clinically appropriate does not make it lawful for a massage therapist to perform them and bill Plaintiffs for them as physical therapy services, nor does it render non-fraudulent the affirmative misrepresentation on the HCFA-1500 form that a licensed physician performed or supervised the service. *See* Fla. Stat. § 627.736(1)(a)5; *Gov't Emps. Ins. Co. v. The Right Spinal Clinic, Inc.*, No. 23-11778, 2024 WL 4564168, at *7-8 (11th Cir. Oct. 24, 2024). Moreover, Plaintiffs expressly allege that the physical therapy services were medically unnecessary and administered pursuant to pre-determined, cookie-cutter protocols without regard for each patient's individual circumstances or treatment progress — a separate and independent basis for fraud that does not depend on the abstract clinical appropriateness of the modalities themselves. *See* ECF No. [1] at ¶¶176, 179,

181. Accordingly, paragraph 158 of the Complaint does not contradict Plaintiffs' fraud theory; it addresses a different question than the one Plaintiffs' claims actually present.

The SSR Defendants' third plausibility argument is that the Complaint devotes substantial narrative to PENS treatments billed under CPT code 64999 — services that Plaintiffs' own Exhibit 3 confirms SSR never submitted — and that this demonstrates the Complaint's fundamental implausibility as applied to the SSR Defendants. *See* ECF No. [37] at 9–10, 12–13. This argument is readily disposed of. The Complaint's PENS billing allegations are expressly directed at the Ace Medical Defendants — not the SSR Defendants — and the Complaint makes this limitation plain on its face. *See* ECF No. [1] at ¶¶194–205. The SSR Defendants do not and cannot identify a single allegation in the Complaint affirmatively asserting that SSR submitted PENS claims. To the extent the SSR Defendants argue that the incorporation of multi-clinic allegations by reference constitutes a shotgun pleading defect, the Court addresses that argument in the context of Rule 9(b) and group pleading below. As a freestanding plausibility argument, however, the PENS billing theory provides no basis for dismissal of the claims against the SSR Defendants. For the foregoing reasons, the SSR Defendants' Motion to Dismiss on Rule 8(a)(2) plausibility grounds should be denied.

B.     **Rule 9(b) Particularity, Group Pleading, and Common Law Fraud (Count V)**

Rule 9(b) requires that plaintiffs "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, plaintiffs "must allege precisely what statements were made, the time and place of each such statement and the person responsible for making it, the content of such statements and the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud." *Francois*, 565 F. Supp. 3d at 1267 (quotation marks and citation omitted); *see also Ziemba*, 256 F.3d at 1202. Even so, the "elements

26

of fraud — particularly including intent and knowledge — may be, and often are, proven by circumstantial evidence." *Glob. Quest*, 849 F.3d at 1030. The heightened pleading requirement of Rule 9(b) exists to ensure defendants are placed on notice of the precise misconduct alleged and to protect defendants against spurious charges of fraud. *See Ziemba*, 256 F.3d at 1202. Through that lens, the Court addresses the SSR Defendants' Rule 9(b) and group pleading arguments.

The SSR Defendants argue that the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard because it does not identify the specific fraudulent statements made, the specific individuals at SSR who made them, the specific times and circumstances of each misrepresentation, or the manner in which each statement misled Plaintiffs, and instead relies on generalized assertions about conduct spanning years of billing without claim-level specificity. *See* ECF No. [37] at 10–11. The Court disagrees. The Complaint satisfies Rule 9(b) through multiple layers of particularity as to the SSR Defendants specifically. First, the Complaint identifies the specific defendants responsible for the fraudulent billing with precision: Rodriguez owned and controlled SSR and directed its billing operations; Rosado served as nominal medical director from December 2020 through February 2024; and Musoff replaced Rosado in that role in February 2024 and continues to serve in that capacity. *See* ECF No. [1] at ¶¶8–11. Second, the Complaint specifies the precise false statements at issue — the representations contained in each HCFA-1500 form submitted to Plaintiffs through the U.S. mail, which uniformly misrepresented that SSR was in compliance with Florida law and eligible to collect PIP benefits, that the underlying services were lawfully provided and medically necessary, and that the licensed practitioners identified in Box 31 of the form had personally performed or directly supervised the services billed. *See id*. at ¶¶210–211. Third, the Complaint provides the manner in which those statements misled Plaintiffs — by inducing Plaintiffs, under its statutory and contractual obligation to process claims within

27

thirty days, to pay at least $550,000.00 on claims it would not have paid had the true facts been known. *See id*. at ¶¶217–218, 233. And for the physical therapy billing, the Complaint identifies by name the specific unlicensed practitioner — Paul Aiello, L.M.T. — who performed the services at SSR that were billed as though performed or supervised by licensed physicians. *See id*. at ¶175. Finally, Exhibit 1 to the Complaint is a comprehensive chart identifying thousands of specific fraudulent claims submitted through SSR by service type, service date, approximate mailing date, dollar amount, and the SSR Defendants' own claim numbers. *See* ECF No. [1-3].

Courts in this Circuit have found PIP fraud complaints with precisely this combination of structural allegations, patient-specific examples, and supporting billing charts sufficient to satisfy Rule 9(b). *See, e.g., Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 20-CV-2419-VMC-CPT, 2021 WL 734575, at *8 (M.D. Fla. Feb. 25, 2021) (complaint sufficient under Rule 9(b) where Plaintiffs "provide[d] numerous examples of bills for allegedly fraudulent and medically unnecessary services" and attached "a chart of over 3,100 allegedly fraudulent claims" identifying the persons who performed and billed for the services, why the scheme was fraudulent, and how the claims were submitted); *Gov't Emps. Ins. Co. v. Merced*, No. 20-CV-0802-KKM-AAS, 2021 WL 2417009, at *4 (M.D. Fla. June 14, 2021) (same). The SSR Defendants' Rule 9(b) argument accordingly fails.

The SSR Defendants separately argue that the Complaint impermissibly lumps them together with the other Clinic Defendants by incorporating more than 200 paragraphs of generalized multi-clinic allegations without distinguishing SSR's conduct, including allegations regarding PENS billing under CPT code 64999 that Plaintiffs' Exhibit 3 confirms SSR never engaged in. *See* ECF No. [37] at 9–10. The Eleventh Circuit has held that Rule 9(b) requires particularized allegations of what each defendant allegedly did and how that conduct purportedly

28

misled the plaintiff, and that collective accusations against "defendants" generally are insufficient because they deprive individual defendants of fair notice and the ability to meaningfully respond. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007); *Brooks,* 116 F.3d at 1380-82; *see also Francois*, 565 F. Supp. 3d at 1267; *Ziemba*, 256 F.3d at 1202.

The group pleading argument fails here for two reasons.  First, the SSR Defendants-specific allegations name them specifically and/or are self-contained in their identification of each Defendant's role, making it implausible that any SSR Defendant is left without fair notice of the specific conduct alleged against them.  Courts in this Circuit have rejected the group pleading argument under substantially similar circumstances.  *See, e.g., Gov't Emps. Ins. Co. v. Gomez-Cortes*, No. 20-CV-21558, 2021 WL 8263492, at *5 (S.D. Fla. Mar. 30, 2021) (rejecting group pleading argument where, as here, "GEICO has grouped the Defendants together in certain portions of the Complaint" but "has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme"); *Merced*, 2021 WL 2417009, at *2-3 (same).

Second, as to the PENS billing specifically, the SSR Defendants' argument mischaracterizes the Complaint.  As previously stated, the PENS allegations in paragraphs 194 through 205 are expressly limited to Ace Medical — not the SSR Defendants — and the Complaint makes that limitation plain on its face.  *See* ECF No. [1] at ¶¶194–205.  The SSR Defendants cannot identify a single allegation in the Complaint affirmatively asserting that SSR submitted PENS claims because no such allegation exists.  The presence of PENS allegations directed at a different set of Defendants in a multi-defendant complaint does not constitute impermissible group pleading as to the SSR Defendants, and it provides no basis for dismissal of the claims against

them.  Accordingly, the SSR Defendants' Motion to Dismiss on Rule 9(b) particularity and group pleading grounds should be denied.

## C.    Declaratory Judgment (Count I)

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in cases "of actual controversy within" their jurisdictions.  28 U.S.C. § 2201(a).  The threshold question in any declaratory judgment action is "whether a justiciable controversy exists."  *Atlanta Gas Light*, 68 F.3d at 414.  To establish such a controversy, the party invoking the court's authority "must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition."  *Id.* (quotation marks omitted).  With that standard in mind, the Court addresses the SSR Defendants' two arguments for dismissal of Count I.

The SSR Defendants argue that Plaintiffs have failed to allege a justiciable controversy or substantial likelihood of future injury because the Complaint is based entirely on historical billing practices and identifies no ongoing or imminent conduct by SSR warranting declaratory intervention.  *See* ECF No. [37] at 12–13.  This argument is unavailing.  This is because the Complaint expressly alleges that SSR has submitted more than $75,000.00 in pending, unpaid PIP billing to Plaintiffs for which SSR claims entitlement to reimbursement and for which Plaintiffs dispute any obligation to pay. *See* ECF No. [1] at ¶¶ 219–226.  That is not a dispute about historical conduct — it is a live, ongoing financial controversy between parties with directly adverse legal interests over whether Plaintiffs are presently obligated to satisfy outstanding claims.  *See Maryland Cas. Co.*, 312 U.S. at 273.  The Eleventh Circuit has expressly recognized that a

plaintiff-insurer is entitled to seek a declaration that it need not pay fraudulent or unlawful PIP billing and has affirmed declaratory judgments to that effect on materially identical facts. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab.*, 739 F.3d 579, 584 (11th Cir. 2013) (holding that "State Farm was entitled to seek a judicial remedy to recover the amounts it paid Silver Star and to obtain a declaratory judgment that it is not required to pay Silver Star the amount of the outstanding bills"); *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1330, 1332-34 (11th Cir. 2016) (same). Courts in this District have denied motions to dismiss identical declaratory judgment claims brought by plaintiff-insurers in analogous PIP fraud actions on the same grounds. *See, e.g., Gomez-Cortes*, 2021 WL 8263492, at *9. The SSR Defendants' invocation of PENS billing as support for the absence of a justiciable controversy fares no better — as addressed above, the Complaint does not allege that SSR submitted any PENS claims, and the absence of that allegation does not diminish the live controversy over the $75,000.00 in pending non-PENS billing that SSR has submitted and Plaintiffs refuse to pay. Accordingly, Plaintiffs have adequately alleged a justiciable controversy.

The SSR Defendants independently argue that declaratory relief is unavailable here because Plaintiffs possess an adequate remedy at law through Florida's PIP statutory scheme, which already permits insurers to deny, reduce, or recode claims pursuant to Fla. Stat. § 627.736. *See* ECF No. [37] at 13–14. Binding Eleventh Circuit precedent forecloses this argument as does the express text of the Federal Rules of Civil Procedure. Indeed, Rule 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The Eleventh Circuit has applied this principle directly in the PIP context, repeatedly recognizing insurers' right to seek declaratory relief notwithstanding the availability of statutory remedies under Fla. Stat. § 627.736. *See Silver Star*, 739 F.3d at 584;

31

*Vizcay*, 826 F.3d at 1332-34.  Moreover, to the extent the SSR Defendants argue that Count I is duplicative of Plaintiffs' damages claims, redundancy is not grounds for dismissal under Rule 12(b)(6) as a motion to dismiss "tests a claim's plausibility — not redundancy."  *See Tiro*, 2020 WL 5983830, at *3.  The declaratory judgment claim here is forward-looking — it seeks a declaration regarding SSR's entitlement to payment on outstanding and future PIP billing, not merely retrospective relief that would be fully subsumed by resolution of Plaintiffs' damages claims.  It, therefore, provides a form of relief not wholly duplicated by those claims.  *See Mena Catering*, 512 F. Supp. 3d at 1322.  Accordingly, the SSR Defendants' Motion to Dismiss Count I should be denied.

## D.   Civil RICO (Counts II and III)

"A plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff."  *Otto Candies*, 137 F.4th at 1196 (quotation marks omitted).  The RICO statute is to "be liberally construed to effectuate its remedial purposes."  *Id.* (quotation marks omitted).  Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity, and Section 1962(d) makes it unlawful to conspire to do so.  *See* 18 U.S.C. §§ 1962(c), (d).  A pattern of racketeering activity requires at least two predicate acts within a ten-year period, *Jackson*, 372 F.3d at 1264, and where those predicates are acts of mail fraud, the RICO allegations must satisfy Rule 9(b)'s heightened pleading standard as well, *Am. Dental Ass'n.*, 605 F.3d at 1290.  RICO defines "enterprise" to include both legal entities and any group of individuals "associated in fact although

32

not a legal entity." 18 U.S.C. § 1961(4). Section 1962(c) also requires a distinction between the RICO "person" and the RICO "enterprise" — "a RICO enterprise must be an entity separate and distinct from any individual defendant." *Cisneros*, 972 F.3d at 1215. Applying these standards, the Court addresses the SSR Defendants' arguments for dismissal of Counts II and III.

The SSR Defendants argue that Plaintiffs failed to plead the predicate acts of mail fraud with the particularity Rule 9(b) requires. *See* ECF No. [37] at 14–15. The Court disagrees. Mail fraud occurs when a person "(1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails in furtherance of that scheme." *Am. Dental*, 605 F.3d at 1290. Each HCFA-1500 billing form submitted through the U.S. mail to Plaintiffs constitutes a separate predicate act of mail fraud. The Complaint identifies the specific false representations contained in each mailing — that SSR was in compliance with Florida law and eligible to collect PIP benefits, that the underlying services were lawfully provided and medically necessary, and that the practitioners identified in Box 31 had personally performed or supervised the billed services — none of which were true. *See* ECF No. [1] at ¶¶210–211, 229, 238. As addressed in the Rule 9(b) analysis above, the Complaint provides examples of fraudulent billing specifying the who, what, when, where, and why of the SSR Defendants' fraudulent submissions, supported by the comprehensive billing chart in Exhibit 1 identifying thousands of individual fraudulent claims by service type, date, mailing date, dollar amount, and claim number. *See* ECF No. [1] at ¶¶112, 140, 161; ECF No. [1-3]. Materially identical RICO predicate act allegations have been found sufficient to survive a motion to dismiss in analogous PIP fraud actions. *See AFO Imaging*, 2021 WL 734575, at *8. Thus, the SSR Defendants' predicate act argument fails.

The SSR Defendants' most developed RICO argument is that the enterprise element is fatally defective because Plaintiffs simultaneously designate each of the four Clinic Defendants as

a separate RICO enterprise in different paragraphs of the Complaint without alleging any connection among them.  *See* ECF No. [37] at 14–15.  The SSR Defendants contend that this approach constitutes a wholesale failure to plead the enterprise element rather than a permissible pleading of alternative theories.  *See id.*  The SSR Defendants also argue that the enterprise allegations fail because Plaintiffs do not distinguish the enterprise's existence from the racketeering activity itself.  *See id.* at 15.

As to the first argument, the Court finds that Plaintiffs have adequately alleged the enterprise element.  RICO defines "enterprise" to include "any . . . corporation."  18 U.S.C. § 1961(4).  SSR is a Florida corporation.  *See* ECF No. [1] at ¶9.  The Complaint clearly and specifically designates SSR as the RICO enterprise with respect to the claims against the SSR Defendants — it does not attempt to allege a single association-in-fact enterprise spanning all four Clinic Defendants, but rather alleges that each clinic corporation constitutes its own separate corporate enterprise through which its respective owner conducted a pattern of racketeering activity.  *See* ECF No. [1] at ¶¶9, 228, 236.  This is a well-established and expressly permissible pleading theory.  *See Gomez-Cortes*, 2021 WL 8263492, at *8 (finding substantially similar "enterprise" allegations sufficient and holding that each clinic corporation constituting its own separate enterprise was adequate under § 1961(4)).  The SSR Defendants' contention that Plaintiffs' clarification of this theory in their Response constitutes an impermissible attempt to amend the Complaint through briefing overstates the point — the Complaint, specifically and unambiguously identifies SSR as the enterprise for the RICO counts brought against the SSR Defendants, and no amendment is needed to reach that conclusion.  *See* ECF No. [1] at ¶¶9, 228, 236.

34

CASE NO. 25-CV-25241-BLOOM/Elfenbein

As to the second argument — that the enterprise must exist separately from the racketeering activity itself — the SSR Defendants invoke *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000), for the proposition that the enterprise must have an existence apart from the predicate acts. *See* ECF No. [37] at 15. The Complaint adequately addresses this requirement. SSR was incorporated as a Florida corporation in May 2020 and operated as a licensed healthcare clinic providing physical therapy and examination services to automobile accident victims — it had an organizational structure, employed practitioners, maintained AHCA licensure, contracted with medical directors, and submitted thousands of billing claims over more than four years. *See* ECF No. [1] at ¶¶9, 54–60. The fact that all of SSR's billing was alleged to be fraudulent does not collapse the enterprise into the racketeering activity — SSR had an existence as a corporate entity with an organizational structure and ongoing operations that preceded and extended beyond any individual predicate act of mail fraud. *See* 18 U.S.C. § 1961(4). The *Goldin* requirement is satisfied where, as here, the alleged enterprise is a functioning corporate entity with identifiable structure, membership, and operations, even if those operations were devoted to fraudulent ends. *See Gomez-Cortes*, 2021 WL 8263492, at *8 (finding the enterprise element was adequately alleged under materially similar circumstances). Accordingly, the SSR Defendants' motion to dismiss Counts II and III should be denied.

### E. FDUTPA (Count IV)

"To assert a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages." *Ounjian*, 89 F.4th at 860 (citing *KC Leisure*, 972 So. 2d at 1073). A deceptive act is one likely to mislead a reasonable consumer, and an unfair practice is conduct that offends established public policy or is immoral, unethical, oppressive, or substantially injurious to consumers. *See PNR*, 842 So. 2d at 777.

35

FDUTPA damages are measured by the difference in market value between what was received and what should have been received.  *See Butland*, 951 So. 2d at 869 (quoting *Heller,* 454 So.2d at 585).  Through this lens, the Court addresses each of the SSR Defendants' three arguments for dismissal of Count IV.

The SSR Defendants first argue that Plaintiffs have not plausibly alleged a deceptive act or unfair practice because the Complaint describes only routine billing for conservative post-accident treatment that Plaintiffs themselves plead is the appropriate and expected standard of care for soft-tissue injuries, and that Plaintiffs' own Exhibit 3 forecloses any characterization of SSR as engaging in a pattern of deceptive or unfair conduct.  *See* ECF No. [37] at 16.  The Court is not persuaded.  As addressed above in the plausibility analysis, the SSR Defendants' argument rests on a fundamental mischaracterization of Plaintiffs' theory — the clinical appropriateness of a treatment modality and the lawfulness of a specific provider's performance and billing of that same modality are two distinct questions, and an affirmative answer to the first does not resolve the second.  The Complaint specifically alleges that the SSR Defendants submitted thousands of HCFA-1500 billing forms to Plaintiffs that were deceptive in the most literal sense: they represented that SSR was in compliance with Florida law, that the services were lawfully provided and medically necessary, and that the practitioners identified in Box 31 had personally performed or supervised the billed services — all of which were false.  *See* ECF No. [1] at ¶¶ 210–211, 246–247.  Courts in this Circuit have consistently held that fraudulent conduct in the context of PIP billing qualifies as a deceptive act for purposes of FDUTPA, and that conduct of this type — misleading an insurer into believing it is obligated to pay claims for unlawfully provided services — constitutes an unfair practice that contravenes the public policy established by the Clinic Act, the Fraudulent Insurance Claims Statute, the Physical Therapy Act, and the No-Fault Law.  *See*

*State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.*, 446 F. Supp. 3d 1032, 1054–55 (S.D. Fla. 2020); *Gomez-Cortes*, 2021 WL 8263492, at *9-10.

The SSR Defendants next argue that FDUTPA does not apply because Florida's No-Fault Law expressly regulates the challenged conduct — PIP billing, coding, and medical necessity determinations —and it therefore falls within FDUTPA's statutory exemption for conduct governed by laws administered by the Office of Insurance Regulation ("OIR"). *See* ECF No. [37] at 16 (citing *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 388 (Fla. 1st DCA 2014)). Again, the Court disagrees. The FDUTPA exemption under Fla. Stat. § 501.212(4) applies to conduct regulated under laws administered by OIR — it is directed at insurers' own regulated conduct, not at the deceptive conduct of healthcare providers who defraud insurers. The SSR Defendants conspicuously never explain what specific provision of the No-Fault Law or Florida's PIP insurance regime "governs" a plaintiff-insurer's affirmative FDUTPA claims to recover payments it has already made as a result of a defendant's deceptive practices. *See* ECF No. [49] at 18. *Beach Blvd. Auto* is inapposite — that case addressed a state enforcement action against an automobile dealer and has no application to an insurer's affirmative FDUTPA claims seeking to recover PIP payments already made as a result of a healthcare provider's deceptive billing. Indeed, FDUTPA claims in cases materially indistinguishable from this one determined that the statutory exemption was inapplicable. *See Gomez-Cortes*, 2021 WL 8263492, at *10 ("These actions were of the same type which the Eleventh Circuit acknowledged were not regulated by the OIR in *Physicians Injury Care Ctr*. As such, because this conduct is not regulated by the OIR, and because this case is brought by—rather than against—an insurance agency, the Court finds the FDUTPA exception outlined in Fla. Stat. § 501.212(4)(a) does not apply.") (internal citations omitted).

The SSR Defendants finally argue that Plaintiffs fail to plead actual damages because FDUTPA damages are measured by the difference in market value between what was received and what should have been received, and Plaintiffs do not allege that SSR's services were valueless or never performed. *See* ECF No. [37] at 16–17. Once again, the Court disagrees. The Complaint alleges that SSR operated in pervasive violation of Florida law — including the Clinic Act, the No-Fault Law, and the Physical Therapy Act — rendering SSR categorically ineligible for PIP reimbursement from the outset. *See* ECF No. [1] at ¶¶38–39, 173–174. Where a provider is categorically ineligible for reimbursement because its services were unlawfully rendered, the value of those services as delivered is zero — regardless of whether the services were physically performed — and the full amount paid by the insurer constitutes cognizable actual damages under FDUTPA. *See State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, No. 611-CV-1373-ORL-31GJ, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (explaining that "the purchase price is the proper measure of 'actual damages'" when defendant's services are "rendered valueless as the result of a defect" and that at the pleading stage it is sufficient to allege that "but for Defendants' deceptive act, [the insurer] would not have paid PIP benefits"). Here, Plaintiffs allege damages of at least $550,000.00 on this basis. *See* ECF No. [1] at ¶250. That is sufficient to plead actual damages under FDUTPA at this stage. Accordingly, the SSR Defendants' Motion to Dismiss Count IV should be denied.

F.     **Unjust Enrichment (Count VI)**

Finally, the SSR Defendants argue that the unjust enrichment claim fails because unjust enrichment is an equitable remedy unavailable where a contract governs the parties' relationship, and that under Florida's PIP scheme, SSR's rights derive from assignments of benefits issued pursuant to Plaintiffs' insurance contracts with its insureds, making any dispute between them

38

contractual in nature rather than equitable. *See* ECF No. [37] at 18–19. This argument rests on a defective premise. An assignment of PIP benefits does not create an express contract between a plaintiff-insurer and a defendant healthcare provider — it places the provider in the shoes of the insured for purposes of collecting PIP benefits, but it does not establish a direct contractual relationship between the insurer and the provider. *See State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr., Inc.*, No. 6:06-CV-1757-ORL-GJK, 2008 WL 11334170, at *14 (M.D. Fla. Dec. 31, 2008) (rejecting the identical argument and holding that an assignment of PIP insurance benefits does not create an express contract between a plaintiff-insurer and a defendant healthcare provider). Because no express contract governs the relationship between Plaintiffs and the SSR Defendants, the contractual bar to unjust enrichment does not apply. *See AFO Imaging*, 2021 WL 734575, at *8 (rejecting the same argument and holding that Plaintiffs could plead unjust enrichment in the alternative in an analogous PIP fraud action); *Merced*, 2021 WL 2417009, at *4 (same, holding that "even if Plaintiffs have adequate legal remedies, those remedies do not bar their unjust enrichment claims at this point").

The SSR Defendants further argue that the unjust enrichment claim fails because the Complaint neither expressly pleads the claim in the alternative nor alleges the absence of an adequate remedy at law, as required where a plaintiff also alleges the existence of a contract. *See* ECF No. [37] at 18–19; ECF No. [52] at 5–6. The SSR Defendants rely principally on *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1367 (S.D. Fla. 2018), in which the court dismissed an unjust enrichment claim where the plaintiff's complaint did not state that the claim was pled in the alternative and relied on the same predicate facts as its contract-based claims. *See* ECF No. [52] at 5–6. However, the SSR Defendants' reliance on *Coleman* is misplaced for two reasons. First, as addressed above, no express contract exists between Plaintiffs and the SSR Defendants — the PIP

insurance policies run between Plaintiffs and their insureds, not between Plaintiffs and SSR — and *Coleman*'s requirement that a plaintiff allege the absence of an adequate remedy at law is triggered only "upon a showing that an express contract exists." *Coleman*, 328 F. Supp. 3d at 1367. Because no such contract exists here, that requirement is not implicated. Second, even if the adequate-remedy requirement applied, Florida law is clear that the general rule barring equitable relief where an adequate legal remedy exists "does not apply to unjust enrichment claims," and that unjust enrichment fails only "upon a showing that an express contract exists between the parties" — a showing the SSR Defendants cannot make on this record. *See Altamonte Springs*, 2011 WL 6450769, at *5 (cleaned up). Courts in this Circuit have rejected the identical argument in analogous PIP fraud actions, permitting plaintiffs to pursue unjust enrichment alongside other legal claims even where adequate legal remedies existed. *See AFO Imaging*, 2021 WL 734575, at *8; *Merced*, 2021 WL 2417009, at *4. Accordingly, the SSR Defendants' Motion to Dismiss Count VI should be denied.

## IV. CONCLUSION

For the reasons explained above, I respectfully **RECOMMEND** that the Motion to Dismiss, **ECF No. [37]**, be **DENIED**.

The Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th

Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on  April 24, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record